UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— X
                                          :
JOHN COTTAM,                              :
                                          :
                Plaintiff,                :    16 CV 04584 (RJS)
                                          :
v.                                        :
                                          :    **ANSWER AND**
GLOBAL EMERGING CAPITAL GROUP, LLC,       :    **COUNTERCLAIM**
ALEXANDER KIBRIK, WILLIAM                 :
UCHIMOTO, 6D GLOBAL                       :
TECHNOLOGIES, INC., 6D                    :
ACQUISITIONS, INC., and TEJUNE            :
KANG,                                     :
                                          :
                Defendants.               :
——————————————————————— X

Defendants 6D Global Technologies, Inc., 6D Acquisitions, Inc., and Tejune Kang (collectively, the "6D Defendants") for their Answer to Plaintiffs' Complaint and Counterclaim in this action, hereby respectfully answer and allege as follows. References to paragraphs are to the paragraphs of Plaintiff's Complaint.

## ANSWER

1.      The allegations of Paragraph 1 contain legal conclusions and statements about the types of claims the Complaint purports to assert, to which no response is required. The 6D Defendants deny that any valid claims are asserted.

2.      Deny the allegations of Paragraph 2.

3.      The allegations of Paragraph 3 contain legal conclusions to which no response is necessary, and otherwise deny the allegations of Paragraph 3.

4.      The allegations of Paragraph 4 contain legal conclusions, to which no response is required. Defendants deny that any valid claims are asserted.

5. Deny knowledge or information sufficient to respond to the allegations of Paragraph 5.

6. Deny knowledge or information sufficient to respond to the allegations of Paragraph 6.

7. Deny knowledge or information sufficient to respond to the allegations of Paragraph 7.

8. Deny the allegations of Paragraph 8.

9. Deny the allegations of Paragraph 9.

10. Deny the allegations of Paragraph 10.

11. Deny the allegations of Paragraph 11.

12. Deny the allegations of Paragraph 12.

13. Deny knowledge or information sufficient to respond to the allegations of Paragraph 13.

14. Deny knowledge or information sufficient to respond to the allegations of Paragraph 14.

15. Deny knowledge or information sufficient to respond to the allegations of Paragraph 15, and respectfully refer the Court to the relevant SEC filings, incorporated by reference, for the full and accurate contents therein.

16. Deny the allegations of Paragraph 16.

17. Deny knowledge or information sufficient to respond to the allegations of Paragraph 17.

18. Deny knowledge or information sufficient to respond to the allegations of Paragraph 18, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

19. Deny the allegations of Paragraph 19, and respectfully refer the Court to the Subscription Agreement for the full and accurate contents thereof.

20. Deny the allegations of Paragraph 20, and respectfully refer the Court to the Subscription Agreement for the full and accurate contents thereof.

21. Deny the allegations of Paragraph 21, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

22. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 22.

23. Deny the allegations of Paragraph 23, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

24. Deny the allegations of Paragraph 24, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

25. Deny the allegations of Paragraph 25, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

26. Deny the allegations of Paragraph 26, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

27. Deny knowledge or information sufficient to respond to the allegations of Paragraph 27.

28. Deny the allegations of Paragraph 28, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

29. Deny the allegations of Paragraph 29, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

30. Deny the allegations of Paragraph 30.

31. Deny the allegations of Paragraph 31.

32. Deny the allegations of Paragraph 32.

33. Deny the allegations of Paragraph 33, except denies knowledge or information to respond as to allegations regarding what the Plaintiff allegedly stated to parties other than the 6D Defendants.

34. Deny knowledge or information sufficient to respond to the allegations of Paragraph 34.

35. Deny knowledge or information sufficient to respond to the allegations of Paragraph 35.

36. Deny the allegations of Paragraph 36, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

37. Deny the allegations of Paragraph 37, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

38. Deny the allegations of Paragraph 38, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

39. Deny the allegations of Paragraph 39.

40. Deny the allegations of Paragraph 40, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

41. Deny the allegations of Paragraph 41, and respectfully refer the Court to the Subscription Agreement and the SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

42. Deny the allegations of Paragraph 42, and respectfully refer the Court to the Subscription Agreement and the SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

43. Deny the allegations of Paragraph 43, and respectfully refer the Court to the Subscription Agreement and the SEC filings, incorporated by reference, for the full and accurate contents thereof.

44. Deny the allegations of Paragraph 44.

45. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 45.

46. Deny the allegations of Paragraph 46, and respectfully refer the Court to the Subscription Agreement and relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

47. Deny the allegations of Paragraph 47, and respectfully refer the Court to the Subscription Agreement, incorporated by reference, for the full and accurate contents thereof.

48. Deny the allegations of Paragraph 48, and respectfully refer the Court to the Subscription Agreement and relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

49. Deny the allegations of Paragraph 49, and respectfully refer the Court to the relevant SEC filings for the full and accurate contents thereof.

50. Deny the allegations of Paragraph 50, and respectfully refer the Court to the relevant SEC filings for the full and accurate contents thereof.

51. Deny the allegations of Paragraph 51, and respectfully refer the Court to the Subscription Agreement and the relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

52. Deny the allegations of Paragraph 52, and respectfully refer the Court to the relevant SEC filings for the full and accurate contents thereof.

53. Deny the allegations of Paragraph 53, and respectfully refer the Court to the relevant SEC filings for the full and accurate contents thereof.

54. Deny the allegations of Paragraph 54, and respectfully refer the Court to the Subscription Agreement and relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

55. Deny the allegations of Paragraph 55, and respectfully refer the Court to the Subscription Agreement and relevant SEC filings, incorporated therein by reference, for the full and accurate contents thereof.

56. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 56.

57. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 57.

58. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 58.

59. Deny the allegations of Paragraph 59.

60. Deny the allegations of Paragraph 60, and respectfully refer the Court to the relevant SEC filings for the full and accurate contents thereof.

61. Deny the allegations of Paragraph 61.

62. Deny the allegations of Paragraph 62.

63. Deny the allegations of Paragraph 63.

64. Deny knowledge or information sufficient to respond to the allegations in Paragraph 64.

65. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 65.

66. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 66.

67. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 67.

68. Deny any implication of wrongdoing by the 6D Defendants; with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 68; deny the allegations regarding SEC filings and respectfully refer the Court to such filings for the full and accurate contents thereof.

69. Deny the allegations of Paragraph 69, and respectfully refer the Court to the relevant SEC filings for the full and accurate contents thereof.

70. Deny any implication of wrongdoing by the 6D Defendants, and, with respect to actions by other persons or entities, deny knowledge or information sufficient to respond to the allegations of Paragraph 70.

71. Defendants repeat and re-allege paragraphs 1 – 70 as if set forth in full herein.

72. Deny the allegations of Paragraph 72.

73. Deny the allegations of Paragraph 73.

74. Deny the allegations of Paragraph 74.

75. Deny the allegations of Paragraph 75.

76. Deny the allegations of Paragraph 76.

77. Deny the allegations of Paragraph 77.

78. Deny the allegations of Paragraph 78.

79. Deny the allegations of Paragraph 79.

80. Deny the allegations of Paragraph 80.

81. Defendants repeat and re-allege paragraphs 1 – 80 as if set forth in full herein.

82. Deny the allegations of Paragraph 82.

83. Deny the allegations of Paragraph 83.

84. Deny the allegations of Paragraph 84.

85. Defendants repeat and re-allege paragraphs 1 – 84 as if set forth in full herein.

86. Deny the allegations of Paragraph 86.

87. Deny the allegations of Paragraph 87.

88. Deny the allegations of Paragraph 88.

89. Deny the allegations of Paragraph 89.

90. Defendants repeat and re-allege paragraphs 1 – 88 as if set forth in full herein.

91. Deny the allegations of Paragraph 91.

92. Deny the allegations of Paragraph 92.

93. Deny the allegations of Paragraph 93.

Defendants deny that any of the forms of relief listed in the Wherefore clauses of the Complaint are appropriate.

## **AFFIRMATIVE DEFENSES**

Without conceding that they bear the burden of proof as to any of the below defenses, the 6D Defendants assert the following affirmative defenses.

1.     The Complaint fails to state a claim upon which relief may be granted.

2.     The Complaint fails to allege fraud with particularly as required by Fed. R. Civ. P. 9(b) as to the 6D Defendants.

3.     The issues and claims in this action are subject to arbitration.  This action should be dismissed without prejudice or stayed during the pendency of the arbitration now taking place between the Plaintiff and the 6D Defendants' co-defendants.  This Answer and Counterclaims is asserted by incoming counsel who is faced with procedural deadlines only in order to preserve any timeliness issue under the Federal Rules of Civil Procedure and relevant statutes of limitations.  This Answer and Counterclaim is not intended to be, and shall be deemed to be, an intentional waiver of any right of the 6D Defendants to have this action stayed or dismissed pending the outcome of the pending arbitration.

4.     The Plaintiff's claims are barred by the doctrine of waiver, estoppel, laches and ratification.  The Plaintiff received 420,290 shares in 6D Global in 2014 and did not timely object to the number of shares received.  Indeed, prior to the time that Plaintiff made his investment at issue, he was fully aware of the reverse splits that had timely been disclosed in the SEC filings that were expressly incorporated by reference in the Subscription Agreement.  Thus, it is no surprise that the Plaintiff for many months did not make any objection whatsoever to the number of shares he received.  In fact, Plaintiff sold all his shares at a profit without ever having timely objected to the number of shares received.

5. This action must be dismissed on the ground that it fails to join necessary or indispensable parties.

6. Plaintiff's claims are barred under the doctrine of unclean hands.

7. Plaintiff's claims are barred by the applicable statute of limitations periods.

## COUNTERCLAIMS

### FIRST CAUSE OF ACTION
### (Mutual Mistake)

1. The 6D Defendants maintain in the first instance that a fair reading of the Subscription Agreement, and the SEC filings of CleanTech Innovations, Inc. ("CleanTech") that were incorporated into the Subscription Agreement, cannot be reconciled with the absurd result that Plaintiff advocates: namely, that only the Plaintiff would have been entitled to receive 6.9 times the shares per Unit of 6D as every other investor under the Subscription Agreement. However, pleading in the alternative, even assuming that there is a technical reading of the Subscription Agreement that would lead to this result, then the Subscription Agreement must be reformed under the doctrine of mutual mistake.

2. The Subscription Agreement form was printed as of June 17, 2014, and as of that date, accurately set forth the number of shares of CleanTech then in existence. Specifically, page 2 of the Subscription Agreement states that "there are currently an aggregate of 24,982,822 shares of CleanTech Common Stock issued and outstanding." This information was accurate on the date that the Subscription Agreement form was printed.

3. The Subscription Agreement also included a Cap Table on page 2 that set forth the capitalization of CleanTech, whose calculation was based on the then-existing 24,982,822 shares of CleanTech. The number of shares underlying the Units that were being offered in the

form Subscription Agreement (50,000 shares per Unit) were clearly calculated according to and based on the then-existing 24,982,822 shares of CleanTech.

4. As of the date it was printed (June 17, 2014), the Subscription Agreement set forth the fundamental and material economic terms going to the foundation of the agreement that all investors were agreeing to, based on the stated assumptions in the form Subscription Agreement as to the number of then-existing outstanding shares of CleanTech. The Subscription Agreement's provisions regarding the number of shares per Unit being offered for investment were clearly based on the number of shares of CleanTech in existence as of the date the Subscription Agreement was published.

5. On page 9 of the Subscription Agreement, bold and italicized text expressly provided that it incorporated by reference existing CleanTech SEC filings, as well as any CleanTech SEC filings that would be made between the date of its publication and the date that investors made their investments. The Subscription Agreement makes clear, and the Plaintiff understood, that there would be other investors similarly purchasing Units as valued under the terms of the Subscription Agreement

6. Subsequent to the printing of the form Subscription Agreement form, but before Plaintiff made his investment, CleanTech Common Stock underwent two reverse splits: one which occurred on or about July 14, 2014, and another which occurred on or about September 16, 2014. These two reverse splits were fully and accurately disclosed in timely-filed SEC filings, which Plaintiff – a highly sophisticated investor -- had full access to. As noted, these SEC filings that fully disclosed the two reverse splits were incorporated by reference in to the Subscription Agreement.

7. The Subscription Agreement not only expressly incorporates by reference the existing and forthcoming SEC filings, but clearly warned investors, including the Plaintiff, in boldface and italicized type, to carefully read all subsequent CleanTech 10-K and 10-Q filings that were to be made between the date that the Subscription Agreement was printed and the time the investors, including the Plaintiff, made their investment.  The fact of these two reverse-splits were known to the Plaintiff – a highly sophisticated investor – before he invested his money and signed the form Subscription Agreement.

8. The Plaintiff understood that the number of shares underlying the Units as defined in the form Subscription Agreement was based on the number of shares outstanding as of the date the form Subscription Agreement was printed (June 17, 2014).  There was a meeting of the minds between the Plaintiff and 6D Acquisitions, Inc. that the economic terms of the transaction contemplated by the form Subscription Agreement, including the number of shares underlying each Unit, was based on the total number of CleanTech shares outstanding as of the date that the form Subscription Agreement was printed, as well as the capitalization of CleanTech set forth in the Cap Table.  This included the figure of 536,125,218 shares of CleanTech represented in the Cap Table.

9. As a result of the two reverse splits that were fully disclosed in the SEC filings that were expressly part of the Subscription Agreement, at the time that the Plaintiff and 6D Acquisitions, Inc., formally entered into the agreement, the statement in the Subscription Agreement that "there are currently 24,982,833 shares of CleanTech Common Stock issued and outstanding" and the corresponding figure of 536,125,218 shares of CleanTech in the Cap Table, were not accurate.

10. Despite the meeting of minds that existed between the Plaintiff and 6D Acquisitions, Inc., as to the economic terms of the agreement, on the date that the Plaintiff signed the form Subscription Agreement and invested his money, the number of CleanTech shares then in existence varied from the number of shares that were set forth in the form Subscription Agreement that was printed months earlier. Thus, the form set forth a mutual mistake in fact not only as to the number of CleanTech shares actually in existence as of the date of the investment, but also as to the corresponding figures in the Cap Table – a mutual mistake that did not reflect the true actual meeting of the minds that had been reached as to the material economic terms of the agreement. This mutual mistake of fact affected the proportion of shares reflected in the Cap Table.

11. This mutual mistake in fact was of mutual concern and went to the foundation of the meeting of the minds that had been formed between the Plaintiff and 6D Acquisitions, Inc.

12. To properly implement the parties' clear intentions, and to avoid the absurd result that only Plaintiff (as opposed to all other investors) would receive a windfall and multiples of the number of shares that every other investor received, it is obvious that the number of shares referred to in the Subscription Agreement as "underlying the Units" should be proportionately adjusted to take into account the reverse splits of CleanTech stock that occurred between the printing of the Subscription Agreement form, and the time of the Share Exchange contemplated under the Subscription Agreement.

13. If Plaintiff's reading of the Subscription Agreement were to be accepted, the Subscription Agreement would have been impossible to carry out according to its express terms or as a practical matter, because the agreement contemplated an amount of CleanTech shares that was much larger than that which actually existed. In that sense, as of the date of the Plaintiff's

investment, the number of shares of CleanTech set forth in the earlier printed form Subscription Agreement is a scrivener's error, as the form Subscription Agreement no longer reflected the actual number of CleanTech shares in existence by virtue of SEC filings that are expressly made part of the agreement.  The meeting of the minds reached between 6D Acquisitions, Inc. and the investors (including the Plaintiff) was that each investor would receive an interest per Unit that valued each Unit at 50,000 shares based on the number of shares of CleanTech listed in the Cap Table.  That meeting of the minds, and the interests of avoiding an absurd result, requires that the Subscription Agreement be reformed to take into account the true agreement reached between 6D Acquisitions, Inc. and the Plaintiff.

14.     Additionally, accepting Plaintiff's reading of the contract would entitle all other investors under the Subscription Agreement to claim that they too should be entitled to receive shares in an amount unadjusted for the two reverse splits of CleanTech stock, as it would be absurd to allow only one investor under the Subscription Agreement to enjoy such a windfall. Had Plaintiff's reading of the Subscription Agreement been applied at the time the transaction was consummated, Plaintiff would ultimately own the same relative percentage of 6D Global Technologies as he did upon receipt of the shares in the amount adjusted for the two reverse stock splits.

15.     Under the doctrine of mutual mistake, the Court should reform the contract to reflect the essence of the agreement, and the obvious intention of the parties, to adjust the number of shares per Unit to correspond to the number of CleanTech shares outstanding as result of the two reverse splits.

## SECOND CAUSE OF ACTION
### (Unilateral Mistake)

16. The above paragraphs are repeated and incorporated by reference as if fully set forth herein.

17. Pleading in the alternative, even if the Subscription Agreement is viewed as containing a mistake that was unilateral on the part of 6D Acquisitions, Inc., the circumstances here warrant reformation of the Subscription Agreement under the doctrine of unilateral mistake. New York law allows for reformation to be predicated upon a unilateral mistake on one side and deceptive conduct on the other side which tended to obscure the true agreement. Here, the Plaintiff engaged in deceptive conduct in order to attempt to obtain a windfall that no other investor under the Subscription Agreement would enjoy.

18. In 2014, the Plaintiff received 420,290 shares in 6D Global and did not timely object to the number of shares received. Indeed, prior to the time that Plaintiff made his investment at issue, he was fully aware of the reverse splits that had timely been disclosed in the SEC filings that were expressly incorporated by reference in the Subscription Agreement. Thus, it is no surprise that the Plaintiff for many months did not make any objection whatsoever to the number of shares he received. In fact, Plaintiff sold all his shares at a profit without ever having timely objected to the number of shares received.

19. Only after the Plaintiff sold his stock at a profit many months after receiving it, and fully aware of the number of shares he received for many months, the Plaintiff now belatedly seeks to be the sole investor who is entitled to 6.9 times the economic value of the shares than every other investor. Had Plaintiff timely objected to the number of shares he received in 2014, the 6D Defendants and other investors would have had the ability to bring everyone into Court to declare the rights of all interested parties, given that all investors must be treated equally.

Instead, acting with deception and opportunistically, the Plaintiff sat back for many months knowing exactly how many shares he received, sold his shares at a profit, and now has brought a belated claim for breach of contract that seeks to confer upon him a windfall that no other investor under the Subscription Agreement enjoyed. The law and equity should not allow this. This case is precisely why the doctrine of reformation exists, and it should respectfully be applied in these circumstances.

WHEREFORE, Defendants pray judgment against the Plaintiff, and each of them, as follows:

(a) Dismissing the claims set forth in the Complaint;

(b) In the alternative, reforming the contract to adjust the number of shares per Unit to correspond to the reverse splits in stock that had occurred between the date of the form Subscription Agreement and the consummation of the Share Exchange;

(c) Such other and further relief as the Court deems appropriate.


Dated: New York, New York
       July 29, 2017


                                        By:     /s Tom M. Fini
                                                Tom M. Fini, Esq.
                                            Jacques Catafago, Esq.
                                            Tom M. Fini, Esq.
                                            CATAFAGO FINI LLP
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 7412
                                            New York, NY 10118
                                            212-239-9669
                                            tom@catafagofini.com

                                            Attorneys for 6D Global Technologies, Inc.,
                                            6D Acquisitions, and Tejune Kang