UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JOHN COTTAM,

                    Plaintiff,

          v.                                 16 Civ. 4584 (RJS)

6D GLOBAL TECHNOLOGIES, INC.,
et al.,

                    Defendants.

------------------------------x
                                             New York, N.Y.
                                             July 31, 2017
                                             2:10 p.m.

Before:

                    HON. RICHARD J. SULLIVAN,

                                             District Judge

                              APPEARANCES

GOTTLIEB & JANEY, LLP
     Attorneys for Plaintiff
BY:  DERRELLE JANEY
     SARAH A. ADAM

CATAFAGO FINI LLP
     Attorneys for Defendants
BY:  TOM M. FINI

1          (Case called)

2          THE COURT:  Let me take appearances.  For the

3     plaintiff.

4          MR. JANEY:  For the plaintiff John Cottam, Gottlieb &

5     Janie by Derrelle Janie.  And I'm joined at counsel's table by

6     my colleague, Sarah Adam.

7          THE COURT:  Ms. Adam and Mr. Janie, good afternoon.

8          MR. FINI:  Good afternoon, your Honor, my name is Tom

9     Fini of Catafago Fini, LLP, and I'm here on behalf of the

10    defendants 6D Global Technologies, 6D Acquisitions, Inc., and

11    defendant Tejune Kang.

12         THE COURT:  Good afternoon.

13         We are getting a bit of a late start because I just

14    had received or I just had a chance to read a letter that

15    Mr. Fini docketed today related to the pending FINRA

16    arbitration and a contemplated request to stay this action

17    pending the FINRA arbitration, which I do recall some

18    discussion about that previously.  Of course, that was before I

19    issued an order that just kind of telegraphed where I thought

20    this was likely to go on the merits.

21         I will say I wrote a draft that was going to sua

22    sponte convert this to a motion for summary judgment and rule

23    because it seems to me that the contract is unambiguous and

24    supports the plaintiffs.  I then thought, well, I would rather

25    at least give the parties, and particularly the defendants, an

1   opportunity to be heard on the motion for summary judgment

2   before ruling, so that was my reason for pulling back, issuing

3   a short order suggesting that I thought the contract at issue

4   was likely to result in summary judgment in favor of the

5   plaintiffs, and then talk about next steps.

6          What I've got in the interim then, Mr. Fini has come

7   in and has submitted this letter and also has made some other

8   points before that.

9          Let's talk about the stay.

10         Mr. Janie, it says here that you're opposed to the

11  stay.  That's because you smell blood in the water based on my

12  order, or something else?

13         MR. JANEY:  Several things, your Honor.  And I do note

14  the conversation that we had with then counsel for 6D at the

15  time as reflected in the joint submission.

16         To your question, your Honor, what's different, there

17  are several things that have since changed.  At the time, and I

18  believe that the transcript from the September 2016 appearance

19  in sum and substance bears this out, we believed then that the

20  FINRA matter would proceed much more quickly that, for example,

21  there would be discovery yielded from that proceeding that

22  would then potentially be relevant, at least the thinking was

23  at the time, to the district court proceeding.  That has not

24  turned out to be the case.

25         We are in fact now in discovery in the FINRA

1   proceeding.  There has not been a scintilla of documents

2   produced from the other side in the FINRA proceeding.  We

3   anticipate having to file a motion to compel.  That's No. 1.

4        No. 2, everyone seems to want a stay of these

5   proceedings, whether it's in the FINRA case or now upon

6   Mr. Fini's appearance in the district court case.  And what I

7   mean by that, to be explicit, your Honor, counsel for the FINRA

8   respondents has requested a stay.  Our position is pending this

9   district court action we have told him that we would oppose

10  that.  To be clear, he has not filed that at this point.

11       THE COURT:  When did you have this communication with

12  counsel in the FINRA arbitration?

13       MR. JANEY:  Approximately three weeks ago, your Honor.

14       THE COURT:  Before or after my order?

15       MR. JANEY:  Certainly before your order, your Honor,

16  and he has renewed that request and we have told him that we

17  would oppose it.  He hasn't filed anything at this point.

18       We have told counsel for the FINRA respondents the

19  same thing, that in sum and substance in my very, very brief

20  telephone conversation with new counsel for the 6D defendants

21  pending before your Honor, that we believe that a stay on the

22  facts and the law here is inappropriate.  And to amplify that,

23  your Honor, I've only had a brief amount of time to take a look

24  at Mr. Fini's letter.

25       THE COURT:  It was only docketed at 1:17.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          MR. JANEY:  My colleague brought it with me to court.

2     I saw a piece of it on my telephone.  As far as I can tell,

3     your Honor, I just think that there are some factual issues

4     that are not correct.

5          By way of example, looking at counsel's letter on page

6     2, what looks to me to be the third full paragraph on that

7     page, there is a suggestion that there would be -- I'm reading

8     from, your Honor, a real risk that there will be inconsistent

9     findings of facts and law in the two separate proceedings.

10    There, your Honor, we would submit that that demonstrates a

11    lack of understanding of what's going on in the FINRA

12    proceeding, specifically what is alleged in the FINRA

13    complaint.

14         The gravamen of the FINRA complaint, your Honor, is

15    that the broker, the registered rep and the broker-dealer,

16    affirmatively made false representations to Dr. Cottam.  The

17    documentary evidence by way of e-mails makes that clear.  The

18    FINRA statement of claim articulates that throughout the body

19    of the document.  There we have alleged in the main allegation,

20    your Honor, a 10b and 10b-5 allegation.  To the extent that

21    there is a breach of contract claim in the FINRA proceeding, it

22    has no bearing to what's before the district court.

23         The breach of contract claim in the FINRA statement of

24    claim, your Honor, is predicated on the customer agreement,

25    that is, the agreement between the broker-dealer, then Radner.

1   It has now has a new name, CEGG, if I am saying that correctly,

2   and Dr. Cottam.  It does not allow a breach of the contract

3   that is pending before your Honor.

4          Now, certainly by way of a secondary level there needs

5   to be some discussion in the FINRA arbitration about this

6   particular contract, but in the main, your Honor, this

7   particular contract is not medically what's at issue.  Again,

8   the 10b, 10b-5 claims are about the false statements that the

9   broker-dealer and the registered rep made to Dr. Cottam.

10          Your Honor, if I can just further build on that, so

11   that the Court is clear for the purposes of the record, at

12   paragraphs 44 through 48, for example, of the FINRA statement

13   of claim, there it articulates, for example, that Dr. Cottam

14   specifically asked the broker-dealer and the registered rep,

15   based on his prior experience with Benjamin Wey, who is the

16   criminal defendant underlying this action, that Dr. Cottam

17   might be put into a transaction with him.  The broker-dealer

18   affirmatively misled Dr. Cottam that he would be put into a

19   transaction with Benjamin Wey.

20          Similarly, your Honor, we also point out at paragraph

21   52 of the FINRA statement of claim that Dr. Cottam sought

22   specific assurances that this transaction would not include a

23   reverse merger or a shell company.  The broker-dealer and the

24   registered rep affirmatively lied to him about that and there

25   are e-mail correspondences to buttress that.

1          I would go into such detail, although I'm at somewhat

2     of a disadvantage because I'm just receiving the letter motion,

3     that this action pending before your Honor has nothing to do in

4     the gravamen of the allegations that are going on in the FINRA

5     arbitration.  To the extent that counsel is making an assertion

6     based on the bases that are prevalent in this district and in

7     the circuit for considerations of a permissive stay, we would

8     submit that one of the main considerations, that is,

9     inconsistent findings of law, simply here, your Honor, is

10    erroneous.

11         THE COURT:  Because the FINRA arbitration is not going

12    to be resolving the contract that's before me here?

13         MR. JANEY:  That's correct, your Honor.

14         THE COURT:  What about the paragraph below the one you

15    just quoted from which says that:  Absent a stay, the 6D

16    defendants apparently have only 13 days to add to this action

17    every investor who invested under the subscription agreement,

18    as those investors are necessary parties to the claim for

19    reformation made by the 6D defendants in their counterclaim.

20         MR. JANEY:  If I can parse it insofar as I understand

21    it, just focusing on the facts for a moment, and speaking to

22    the facts of it without getting into the substance, there was a

23    global settlement conference put forth by counsel for 6D, their

24    insurance company or their insurance carriers, and their

25    bankruptcy counsel.

```
 1              My recollection is that that global one-day

 2   conference, which stretched for quite some time, occurred,

 3   approximately, if I recall, your Honor, about three months ago.

 4   It is to my understanding, your Honor, and I'm seeing these

 5   numbers here in the letter, but it is to my understanding that

 6   everyone I was in the room with were the defendants with claims

 7   against 6D and a variety of different pieces of litigation

 8   literally across the country.  I was in the room with lawyers

 9   from Florida, lawyers from California.

10              THE COURT:  Everybody in the room was --

11              MR. JANEY:  They were the universe of what I

12   understood to be potential claims against 6D and the 6D

13   defendants.

14              THE COURT:  They would be claims under the contract at

15   issue in this case or based on something different?

16              MR. JANEY:  The limitation of that universe, your

17   Honor, I am not sure.  But to my understanding, it is that the

18   JAMS mediator's job was to bring together the claims that were

19   being lodged against 6D and try to settle them.  As a factual

20   matter, we did not settle out and, to my understanding, we are

21   the only remaining claim.

22              As a factual matter, in terms of the current

23   outstanding claims that people have propagated, I don't know

24   that these numbers are in fact correct.

25              On the issue of the law of reformation, I think we are
```

conflating a couple of things here.  I understand from the

answer and counterclaims that counsel filed on Saturday night

that there is a counterclaim for mutual mistake and unilateral

mistake.  I have comments as to that and I'll hold those aside

for the moment.

          I think, if I understand the paragraph correctly, is

that counsel, in sum and substance, is suggesting that if he is

successful on those counterclaims, then this paragraph would

apply, the issue of reformation of the contract, that the

Court, if I understand the answer and counterclaim, counsel is

looking for the Court to readjust the contract so as to benefit

all of the investors, including those who have not brought an

action.

          THE COURT:  But that's about a subscription agreement

that's different from the contract that's at issue here?

          MR. JANEY:  I understand it to be the same document.

          THE COURT:  I asked you to address that point.  There

are a couple of other points that are raised.  Anything else

you want to say with respect to this late-breaking letter?

          MR. JANEY:  Other than, your Honor, just to reiterate

my earlier point.  The FINRA arbitration in terms of what is

alleged in the causes of action there in the prayer for relief

has no overlap to what is pending before this Court.  To be

clear, yes, as I anticipate counsel to say, there is some

aspects of the underlying subscription agreement that would be

1    a point of conversation in the FINRA arbitration, but, your

2    Honor, we would submit that is of no consequence.  FINRA is not

3    adjudicating the subscription agreement issue.  Thank you, your

4    Honor.

5              THE COURT:  Mr. Fini.

6              MR. FINI:  Thank you, your Honor.

7              First of all, your Honor, I just wanted to make clear

8    that the reason I sent the letter only as of today because in

9    preparing for today I found, as new counsel, the letter that

10   the parties had jointly submitted in September in which the

11   parties agreed, actually contemplated, your Honor, the

12   possibility that you would deny the motion to dismiss, and in

13   that letter we represented that in that event intended to

14   jointly seek a stay.

15             THE COURT:  That's fine.  It's not giving anybody a

16   lot of opportunity to respond to the points.

17             MR. FINI:  What I did was, I called opposing counsel

18   this morning to clarify that was, in fact, his understanding.

19   As soon as he told me it wasn't, I immediately drafted a letter

20   so your Honor would not be blindsided by me raising this issue.

21             THE COURT:  Candidly, whatever tentative agreements

22   the parties may have had back before the briefing on the motion

23   to dismiss, you know, all of that I would think would be

24   altered somewhat by my order, which kind of signals that it

25   seems to me that the plain language of the contract at issue in

1   this case supports the plaintiff's interpretation.

2           It's not shocking to me that in light of my order from

3   July 11 that prior discussions about stays and everything else

4   might go by the boards.

5           What I was contemplating, frankly, is we go straight

6   to summary judgment because if it is in fact the case that the

7   contract is unambiguous, then we don't really need a whole lot

8   of discovery, it seems to me.

9           MR. FINI:  Couple of things, your Honor.  First of

10  all, I would ask for the ability to make a formal motion for

11  the stay because opposing counsel has orally read and

12  characterized what's going on in the FINRA complaint and what's

13  going on there selectively.

14          In fact, what's going on in the FINRA proceeding is

15  exactly what is alleged in the complaint here.  In the

16  complaint in this case there is direct overlap of the facts

17  being alleged both as to the breach of contract and the fraud

18  claim.

19          THE COURT:  Is the FINRA arbitrator going to decide

20  whether there was a breach of the contract?

21          MR. FINI:  The facts that plaintiff Cottam knew, which

22  included the SEC filings, which my prior counsel neglected to

23  tell you, was incorporated by reference in the agreement.

24          THE COURT:  Say that again.  Was incorporated --

25          MR. FINI:  In the transcript of premotion motion to

1   dismiss that your Honor held, when you were trying to

2   understand the motion to dismiss as to the contract claim, my

3   prior counsel did not point out to your Honor, which is not

4   your fault, that the subscription agreement on page 9

5   specifically incorporates by reference the Cleantech SEC

6   filings that would be forthcoming.

7          That is very important to your Honor's thinking about

8   this case because those SEC filings reflect reverse splits that

9   occurred after the date the form subscription agreement was

10  printed.  Those reverse splits, which are incorporated by

11  reference into the agreement and are part of the agreement,

12  would render the cap table numbers.  The number of shares on

13  the cap table are actually incorrect.

14         So the date that the form was printed, those numbers

15  of shares were correct.  As of the date that the parties, when

16  they invested his money, the parties were, in essence,

17  operating under a cap table that didn't accurately reflect the

18  number of shares.  But upon reading the document --

19         THE COURT:  I'm reading page 9.  It says:  The

20  subscriber should carefully consider the risk factors contained

21  in Cleantech's most recent annual report on form 10-K.

22         MR. FINI:  But it says:  The subscriber should

23  carefully consider the risk factors contained in Cleantech's

24  most recent annual report on a form 10-K, as updated or

25  supplemented by subsequent quarterly reports in the form of

1   10-Q, and current reports in the form of 8-Ks, to the extent

2   filed, each of which -- by each of which, I'm referring to the

3   public filings, not just the risk factors.

4          THE COURT:  I don't know.  It says:  If any such risk

5   factors actually occur, then basically the subscriber is on

6   notice that that's a possibility.  Are you saying that the

7   splits were a risk factor?

8          MR. FINI:  Well, your Honor, on summary judgment, when

9   we bring in front of you all of the public filings and when we

10  take Mr. Cottam's deposition and you find out what he knew as

11  of the date, as a sophisticated investor, what he knew as of

12  the date he submitted his investment, we respectfully submit

13  that your Honor will conclude that the cap table on page 2 was

14  a form that was printed in June and that that form and the

15  number of shares reflected does not reflect the state of the

16  world.

17         And under New York law, when there is a mistake in

18  fact in the agreement, there is a mutual mistake or unilateral

19  mistake in every case involving reformation in the case.  In

20  every case, the plain text of the contract presents a problem.

21  If the plain text always ruled, there would be no doctrine of

22  mutual mistake or unilateral mistake.  The whole point of those

23  doctrines is when the contract, for whatever reason, says

24  something that is absurd, that is just not true in the world.

25         THE COURT:  I don't see why it's absurd.  It seems to

1   me that the mistake is not a mutual mistake.  The mistake is

2   the decision to split stock in advance of the transaction

3   that's described and contemplated in the subscription

4   agreement.

5            MR. FINI:  Your Honor, respectfully, a few things on

6   that.  Number one, Mr. Cottam received his shares, which are

7   numbered in 400 and something thousand, in September of 2014.

8   The number of shares, 400 something thousand versus 2.9

9   million, is so dramatic that if he thought he didn't get the

10  shares he was entitled to, it was incumbent upon him to say

11  something at the time before the eggs were scrambled.

12           Had he said he was entitled to 2.5 million more shares

13  in September of 2014, 6D would have brought a declaratory

14  judgment action and sought a declaration to either rescind and

15  give him his money back, if he was under a false impression

16  that there were that many shares, or the Court could have

17  reformed when all of the investors were fresh, having received

18  their shares.

19           What he instead did, he took his shares in 2014, where

20  the number of shares is dramatically different, he then waited

21  until 2015 to sell his shares, in August.  He sells his shares

22  for a profit and then later, in 2016, he sues in this court and

23  says, I didn't realize that I didn't get the number of shares I

24  should have gotten.

25           Well, then, every investor under that theory, every

1    investor should have gotten 6.9 times the number of shares.

2    The transaction would have been impossible because on page 2 it

3    contemplated the number of shares being outstanding that in

4    fact were not outstanding.

5            THE COURT:  What was the point of putting this in on

6    page 2 of the agreement?

7            MR. FINI:  The point on page 2 was to reflect as of

8    the date that the form was printed the number of shares.

9            THE COURT:  It doesn't say that.

10           MR. FINI:  It says on page 2:  Whereas there are

11   currently an aggregate of --

12           THE COURT:  And upon raising the maximum offering of

13   5.1 million, Cleantech will be capitalized as follows.

14           MR. FINI:  Yes, Judge.  Your Honor, I want to say

15   something.  You are absolutely correct that this agreement,

16   ideally, should have had a sentence that said, if there are

17   reverse splits, which I understand were necessary to actually

18   make this transaction possible, which we will get testimony

19   from an expert on, you are absolutely correct, that it would

20   have been very good for there to be a sentence that says that

21   the 50,000 shares and the one-to-one ratio have to be adjusted

22   to account for any reverse splits so that the proportionate

23   ownership of each investment is adjusted so that everybody is

24   treated equally.

25           One thing, for sure, your Honor, I think you would

1   agree with, Mr. Cottam is not the only plaintiff who deserves

2   6.9 times the shares.  Every investor deserves that then.  If

3   your reading is correct, if the technical reading is correct

4   and we ignore the doctrine of mutual mistake and unilateral

5   mistake, then every investor is entitled to 6.9 and his

6   percentage ownership of the company would have been the same.

7          If you look at the doctrine of unclean hands and

8   equity, you will see, when this case goes to summary judgment,

9   if it's not stayed, which it should be stayed, which I'll get

10  to, if this case is not stayed, all 30 investors are going to

11  have to tell you whether they think they are entitled to 6.9 as

12  of the time he got his shares or they all think that he's

13  wrong, and your Honor will rule.

14          THE COURT:  I don't know why I need to hear from them.

15          MR. FINI:  Because they are necessary parties to my

16  reformation claim.

17          THE COURT:  I don't think I get to your reformation

18  claim if I find it's an unambiguous contract, right?

19          MR. FINI:  Your Honor, respectfully, I allege a mutual

20  mistake and unilateral mistake claim cited --

21          THE COURT:  You are now.  It's the first I'm hearing

22  of it, right?

23          MR. FINI:  But it's timely.  This is the first time

24  that the defendants get to file an answer and counterclaim.

25  You wouldn't have gotten the counterclaim before.  The motion

1  to dismiss was made and so the answer wasn't due.

2          THE COURT:  I understand that.  I'm saying, this is

3  the first time I'm hearing it.

4          MR. FINI:  That's right.  The prior counsel, when the

5  prior counsel spoke to you, due to no fault of your own, didn't

6  flag a lot of the issues that I'm flagging now that you will

7  read about in summary judgment.  When you read it and you see

8  that this plaintiff waited over a year after he saw how many

9  shares he had --

10         THE COURT:  That's like a laches defense.  You're

11  asserting a sort of laches defense, that he waited too long?

12         MR. FINI:  On an affirmative claim, you certainly have

13  a laches waiver, gratification.  He received the number of

14  shares which, to a sophisticated investor, if you think you are

15  entitled to 2.9 million shares, you don't notice that you only

16  have 400,000 shares?  Honestly, your Honor?

17         If this case doesn't present the issues of waiver and

18  unclean hands and laches, then I don't know what does.  Because

19  if you accept the number of shares that reflect the reverse

20  splits that are in the public filings that are incorporated by

21  reference, you then sell those shares, you make a profit and

22  then two years later you file an action and you come up with an

23  acute plain text argument and you say, well, I was entitled to

24  a one point ratio, but that ignores that there is a mistake in

25  this contract.

1        If you read the contract to not incorporate those SEC

2   filings, page 2, indisputably, has a mistake in fact in the

3   world.  And there absolutely are cases which we will cite in

4   summary judgment which when courts are faced with that type of

5   mistake, whether it would result in an absurd result, whether

6   the transaction would have been impossible, had he raised this

7   at the time, we would have rescinded it and given him his money

8   back.

9        If he had not raised this claim timely, 6D could have

10  offered him to rescind his investment and give him his full

11  money back.  The reason why he didn't choose to raise it timely

12  is he actually made money.  He made money on the sale of the

13  stock that he actually got.

14        Instead of, your Honor, being able to rescind, your

15  only option now is to reform under our counterclaim or on his

16  affirmative claim, look at his conduct and say, wait a minute,

17  on your affirmative breach of contract, didn't you waive,

18  aren't you guilty of estoppel and laches?  You sold the stock,

19  which is a dramatic difference in the number of shares.  It's

20  not something he didn't notice.  It's 2.9 million he's saying.

21        THE COURT:  Let me stop you.  I'm not sure why this

22  stay is going to fix any of these problems.

23        MR. FINI:  The reason why the stay is relevant is

24  because if your Honor is not convinced by the complaint, which

25  the complaint on its face has overlapping facts on the same

1    exact issues --

2         THE COURT:  What about the resolution in the

3    arbitration is going to affect any of this?

4         MR. FINI:  There are any number of things that can

5    happen in the arbitration that your Honor would want to know

6    before you ruled.  Let me give you an example.  The claim of

7    fraud is absolutely predicated on the same exact theory as the

8    breach of contract.  The theory is that he was defrauded about

9    the number of shares that he would get.

10        If the sophisticated FINRA panel -- there are three

11   panel members.  And all I can tell you, the delay in discovery

12   was due to my opposing counsel's conduct in that FINRA

13   arbitration.  He delayed in making document requests, my

14   understanding is.

15        If that FINRA patent says, hey, Mr. sophisticated

16   investor, you knew about these reverse splits.  You weren't

17   really misled, right?  When you got 400,000 shares in September

18   of 2014, did you not notice that was different than 2.9?

19        If the FINRA arbitrators questioned the credibility of

20   his statement, that goes directly to this breach of contract

21   claim.

22        THE COURT:  It seems to me that the securities fraud

23   claim in this action is really pled as an alternative to the

24   breach of contract.  If there is a win on the breach of

25   contract, then it seems to me that the securities fraud claim

1    is moot and dismissed as a result.  You can't win on both,

2    right?

3              MR. JANEY:  Correct, your Honor.

4              MR. FINI:  That's not true because the theory --

5    securities fraud claims brings in different damages.

6              THE COURT:  My point is, if the contract says what

7    they say it says, then there was, by definition, no fraud.  And

8    so I think plaintiffs, if not explicitly, it seemed to me

9    implicitly, were pleading securities fraud in the alternative

10   to the breach of contract claim.

11             MR. JANEY:  Your Honor, we agree that what you're

12   articulating is reflective of the September 14 conference, our

13   comments at the time, and our position today with respect to

14   what happens here pending before your Honor.

15             And, again, just to iterate the point, your Honor,

16   with respect to just the issue of the stay, FINRA is not

17   resolving the breach of contract claim in connection with the

18   subscription agreement.  That is not what's before them.

19             With respect to the counterclaims, your Honor, that

20   are now a part --

21             THE COURT:  They were just filed a few days ago.

22             MR. JANEY:  I understand that 6D defendants have new

23   counsel, but I have to say, your Honor, given representations

24   by prior counsel and what we understand from bankruptcy

25   counsel, we only view these motions now as efforts to frustrate

1    the judgment, the inevitable judgment, on the basis that

2    counsel for 6D had explicitly told us, your Honor, that their

3    client is on the precipes of filing.

4            With respect to the mutual --

5            THE COURT:  Filing for bankruptcy.

6            MR. JANEY:  Yes, your Honor, which we would submit, as

7    an aside, your Honor, mitigates against any stay here,

8    particularly given the strength of the breach of contract

9    claim.

10           With respect to the mutual mistake and the unilateral

11   mistake arguments, your Honor, we submit that they are

12   frivolous on their face.  And to contextualize it in the law

13   here in the Southern District, citing *Blum v. Spaha Capital

14   Mgmt.*, LLC, 44 F.Supp.3rd 482, a 2014 Southern District case,

15   your Honor, there are just three key points that I'd like to

16   make based on what the district court in that case says about

17   unilateral mistake.

18           Number one, the party asserting the existence of a

19   mutual mistake must show that the mistake in question is

20   mutual.  Well, among other things, John Cottam was not mistaken

21   about the number of units that he believed he was purchasing.

22           The second comment, your Honor, at 494 of that case,

23   New York Court of Appeals, and I'm quoting the case, New York

24   Court of Appeals has held that there is a heavy presumption,

25   that a deliberately prepared and executed written instrument

1   manifests the true intention of the parties and, thus, the

2   proponent of reformation must show, in no uncertain terms, not

3   only that mistake or fraud exists, but exactly what was agreed

4   upon between the parties.  That's going to be impossible here.

5           Three, your Honor, the party alleging the mutual

6   mistake must establish such mistake by clear and convincing

7   evidence.  6D will not be able to establish mutual mistake

8   whatsoever.

9           THE COURT:  I guess the issue is, are they going to be

10  entitled to get some discovery to do that, though?  That is the

11  issue.  My order didn't anticipate these defenses, most of

12  them, and suggested that if this is really about the contract,

13  because that's what the motion to dismiss was, this is an

14  unambiguous contract and each side saying it went their way.

15          MR. JANEY:  Right.

16          THE COURT:  But the motion to dismiss would have to be

17  converted to a motion for summary judgment for plaintiffs to

18  prevail on their interpretation of the contract, which I was

19  about to do before I got cold feet and thought, well, no, I

20  think it's fair to give these guys a chance to respond on what

21  would otherwise be a sua sponte motion for summary judgment or

22  a conversion without real notice.  That's where we are now.

23          Now they are asserting affirmative defenses that

24  presumably are going to require me to go outside of the four

25  corners of the document, right?

1              MR. JANEY:  Yes.  We understand that, your Honor.  The

2      only reason that we did not file a Rule 56, the premotion

3      letter, in accordance with your Honor's individual rules, is

4      that, as the Court knows, not long after the order, the

5      defendants obtained new counsel.

6              And that response, based on the issue of how the

7      response mechanism works under your Honor's individual rules,

8      would have placed an additional burden.  We had heard from

9      counsel requesting an extension of time to file the answer.  We

10     considered that and the response time that counsel would have

11     needed and our determining when to file the premotion letter.

12             That said, your Honor, we are prepared to move forward

13     with that summary judgment motion.

14             THE COURT:  Now there are affirmative defenses and it

15     sounds like you are conceding that the affirmative defenses

16     will require at least some limited discovery, right?

17             MR. JANEY:  There is no question.  Our position with

18     respect to the briefing schedule, which I interpreted in part,

19     was inquired upon in your Honor's order.

20             We would propose, so that we are prepared with

21     whatever extrinsic evidence or material plans to attach, that

22     we have a short four-week discovery period.  The plaintiff is

23     prepared to file its motion two weeks after that limited

24     discovery and submit its reply a week after that the

25     opposition.

1          THE COURT:  Before you sit down I want to ask you

2     about a couple of the other affirmative defenses that are being

3     asserted, some of which have been referenced, some of which

4     not.

5          One of them that we have not really talked about is

6     the assertion that the issues and claims in this action are

7     subject to arbitration.

8          MR. JANEY:  I just think that that's wrong.  The way

9     in which I read it, your Honor, is, I read it to understand

10    that I think there is a preamble there at the top.  Counsel is

11    suggesting that he's new counsel and he is seeking procedurally

12    to ensure that he is preserving certain claims.  I read that

13    particular affirmative defense only in that context.  There is

14    no view of the law that this claim is subject to arbitration.

15         THE COURT:  I just want to make sure from Mr. Fini

16    that I'm not missing something.

17         MR. JANEY:  And I would say, your Honor, if I might,

18    also add, we clarified that with Mr. Flocos, and Mr. Flocos, on

19    the record on September 14, agreed that there is nothing under

20    the law that would subject this to arbitration.  And on the

21    record, your Honor, we were very clear that those claims that

22    were in fact subject to FINRA arbitration, those move to the

23    FINRA arbitration proceeding.

24         THE COURT:  Let me hear Mr. Fini on this.

25         Mr. Fini, you're not suggesting there is an

1   arbitration provision that covers these claims, right?  You are

2   saying there is some overlap and I should stay, but you are not

3   saying that the issues and claims in this action are subject to

4   arbitration.

5        MR. FINI:  Your Honor, frankly, as new counsel, I

6   asserted that to preserve it and there is, as you are aware, a

7   line of authority on the nonsignatory being bound by

8   arbitration where the issues are inextricably intertwined.

9        The reason I didn't feel we had to necessarily address

10  that issue is because if this action is stayed pending the

11  FINRA arbitration, which I respectfully request the ability to

12  put in a formal motion where I point to the pleadings that

13  opposing counsel is selectively reading from and explain why

14  there is an absolute overlap of fact and we cannot strip the

15  breach of contract and there is absolutely the risk of

16  inconsistent findings and rulings, and I do want to make a

17  motion for a stay, my belief is that if the discretionary stay

18  is granted, we don't need to get into the woods of the

19  intertwined theory, nonsignatory to intertwined being bound by

20  arbitration.

21        But I would want to brief that in the alternative

22  because I don't think that plaintiff is right to think that we

23  can railroad this case in four weeks of discovery because he

24  smells blood in the water based on a limited record that we

25  were presented by my prior counsel.

1          I'm confident that this case is about -- reading

2     everything together, it's about mutual mistake or unilateral

3     mistake with a plaintiff who is being opportunistic in his

4     actions.  I am very confident.  I need time to take depositions

5     and add the 30 investors.

6          And this is not a bankruptcy court.  Every litigant

7     who thinks this they have a defendant who may go bankrupt wants

8     fast justice.  But this case doesn't cry out with an investor

9     who made money that you now have to railroad this case on some

10    fast discovery track.  I vehemently disagree with that

11    suggestion.

12         THE COURT:  I guess.  Is there a threat of bankruptcy

13    at this point?

14         MR. FINI:  The company is now making money.  If the

15    company gets sandbagged with one investor out of 30 who

16    suddenly gets a judgment based on an incomplete record because

17    the contract is being read literally without taking into

18    account that the cap table actually misstates the number of

19    shares, and everything else in the agreement is predicated on

20    that cap table, if the plaintiff can get a summary judgment

21    motion without full discovery, yeah, that might cause problems

22    for the company, but that's a reason why I need time to defend.

23         MR. JANEY:  Your Honor, if I can be heard just on this

24    one point.  I understand that counsel is new.  But to the

25    question that your Honor just posed, we have spent months with

 1   bankruptcy counsel, well-regarded bankruptcy counsel who I have

 2   been cocounsel with and appeared on the other side with.  His

 3   name, for the record, is Schuyler Carroll.  He has made

 4   representations on numerous occasions, including the JAMS

 5   mediator, your Honor, who has tried to globally resolve the

 6   issues pertaining to the 6D defendants that this company is on

 7   the precipes.  There are e-mails, there are numerous phone

 8   records of those representations.

 9        Again, I understand that counsel is new.  But to

10   suggest that this company is not on the precipes, is running

11   out of money -- and in fact counsel represented to me the other

12   day, the company doesn't have much money.  I have never heard

13   until this very moment, being in this case for a year, almost,

14   that this company is actually making money.

15        MR. FINI:  Your Honor, can I respond to that.  If you

16   took all of the outstanding class actions, one of which was

17   dismissed by Judge Sweet and now is on appeal, if you took

18   those actions, and gave them credit for a settlement and you

19   put all of the potential liability on the table, bankruptcy

20   counsel was probably saying that the potential liability, if it

21   occurred all at once, would result in the bankruptcy.  But

22   there is insurance money to pay settlements, including the

23   plaintiff in this case, who was offered a hefty settlement.

24   But the plaintiff doesn't want that.

25        THE COURT:  I don't want to get into settlement.  I'm

1    just asking about bankruptcy.

2              MR. FINI:  They are not on the precipes of bankruptcy

3    today.  If every claim that existed out in the world, including

4    if every investor was entitled to seven times the amount of

5    shares, if that reading exists, absolutely this case.  That's

6    one of the ironies.  If the plaintiff wins, everyone loses.

7    There is not enough money to --

8              THE COURT:  I am not going to get into that today.

9    I'm just trying to figure out the affirmative defenses.

10   Another affirmative defense is that plaintiff's claims are

11   barred by the doctrine of waiver, estoppel, laches and

12   ratification.  You have not had too much time to even reflect

13   on that because this answer wasn't filed until Saturday, I

14   think.

15             What is the response to that?

16             MR. JANEY:  Your Honor, in sum and substance, without

17   delving more deeply into the document, I don't want to

18   articulate facts unless they are at my fingertips here, but I

19   believe that the record will show that John Cottam had

20   conversations with the company.  He inquired about the status

21   of his shares.  There is no view of the facts here that John

22   Cottam simply waited for a year in order to inquire about the

23   status of his shares.

24             Again, your Honor, I understand why counsel is trying

25   to make in sum and substance a laches defense.  We believe that

1   that's futile.

2           THE COURT:  Then the other defenses are failure to

3   join unnecessary parties, unclean hands, and a statute of

4   limitations.

5           MR. JANEY:  They are clearly, apparently, efforts to

6   preserve.  We believe, your Honor, that they are simply

7   affirmative defenses that will fail.

8           THE COURT:  Then we have counterclaims, which I guess

9   you have to either answer or move to dismiss procedurally,

10  right?

11          MR. JANEY:  Yes, your Honor.

12          THE COURT:  You can't go straight to summary judgment

13  on those.

14          MR. JANEY:  That's correct, your Honor.

15          THE COURT:  Are you conceding that you can't dismiss

16  those at this point?

17          MR. JANEY:  I'm not conceding that.  Just having

18  looked at them, we are inclined that the likely scenario is

19  that we will move to dismiss, but we need to have another

20  couple of days to look at it.

21          THE COURT:  I thought you conceded that there was

22  going to be need to be discovery --

23          MR. JANEY:  For the purposes of the Rule 56 motion,

24  because what we are hearing from counsel -- not just today, but

25  in a telephone conversation the other day -- that some of this

1   will flow into his opposition to the Rule 56 motion.  So it

2   creates a scenario where we need some level of limited

3   discovery.

4           THE COURT:  I guess we are going to need to get you to

5   answer or move.  I have not looked sort of like line by line

6   through these causes of action, and I am not sure whether there

7   is a basis to make a motion to dismiss or not or whether what

8   you really want to do is answer and go straight to limited

9   discovery.  Sounds like you're not sure yet either.  When will

10  you know?

11          MR. JANEY:  We can know by Friday.

12          MR. FINI:  Your Honor, on that note, there is

13  sometimes when counsel can't agree to go to discovery.

14          Under the federal rules, not only to add the other

15  investors under Rule 14, but under Rule 15, of course, I have

16  an ability to amend as of right.

17          I came into this case on Monday.  Counsel, as a

18  professional courtesy, gave me five days.  I had asked for two

19  weeks to file my answer and counterclaim.  But, apparently, he

20  didn't have authority from his client to give any extension,

21  and I appreciate the five-day extension.

22          But I am going to plead with more particularity the

23  mutual and unilateral mistake, to lay out a lot of the facts

24  that I did for your Honor about how this sophisticated investor

25  got 400,000 shares two years ago, and suddenly two years later

1  realized he should have gotten 2.9, which I think your Honor

2  will find untimely and specificity of that very interesting.

3          I would suggest that a motion to dismiss is a waste of

4  time because these are fact-intensive issues.  If counsel wants

5  to make a motion to dismiss I would suggest, to save him time,

6  that he wait for my amended pleading.  Because if he files a

7  motion to dismiss, I can amend in the face of that motion

8  anyway.  I just didn't want the Court to think that I was not

9  telling him my intentions.

10          THE COURT:  I am inclined to have you amend a week

11  from today and then answer or move within two weeks after that.

12  I'm not inclined to stay --

13          MR. FINI:  Your Honor, one thing.  I need to collect

14  30 investors' names and addresses and under the federal rules

15  I'm entitled to more than a week.  I'm entitled to 14 days

16  under Rule 14.  I have a Herculean task to add those --

17          THE COURT:  Fourteen days from when?

18          MR. FINI:  Under Rule 14 it says that:  A third-party

19  plaintiff must, by motion, obtain the Court's leave if it files

20  the third-party complaint more than 14 days after serving its

21  original answer.

22          I served my original answer Saturday.  Under the

23  federal rules, under Rule 14, to add third parties in a

24  third-party complaint, I would get 14 days.  That, already for

25  a two member firm, I'm going to be up until midnight drafting

1    this.  If I get one week --

2            THE COURT:  Who are the parties that you're adding?

3            MR. FINI:  The parties are the investors on this

4    chart.

5            THE COURT:  You are going to bring a cause of action

6    against those people?

7            MR. FINI:  Those, under Second Circuit, under Southern

8    District Second Circuit law, on reformation, if you're seeking

9    to reform a contract, there is a recent Southern District case

10   where they didn't bring in a party.  There was a party to the

11   contract and the judge said, sorry.  I can't reform because you

12   didn't bring the other parties in.

13           I am going to bring them in all in, unless counsel

14   wants to stipulate that I don't need to bring them in.  But the

15   law says, if you want to conform and other investors will be

16   affected by the reformation, I would have to bring them in.

17           THE COURT:  Why would other investors be affected by

18   the reformation?

19           MR. FINI:  As of the date the shares are issued,

20   everybody was entitled --

21           THE COURT:  I don't care about everybody else.  Nobody

22   else has brought a claim, right?  They have resolved any claims

23   they have with your client, right?

24           MR. FINI:  My clients have a right to assert a claim

25   for reformation.  And when they assert the claim for

1   reformation, the law, understandably, wants the other parties

2   to the agreement to be affected.

3       THE COURT:  How would they be affected?  They would

4   not be affected.

5       MR. FINI:  They will be affected, and let me explain

6   why.  If your Honor says, I am going to apply the plain text.

7   No matter what, I am going to look at the plain text and I am

8   not going to look at the SEC filings.  I don't want to know

9   what this sophisticated investor knew.  The other investors

10  will say, what about us, your Honor?

11      THE COURT:  I don't know what they are going to say.

12      MR. FINI:  We don't know because they have to be added

13  as parties for my reformation claim.  They don't get to find

14  out after you rule about my reformation claim.  They get to put

15  their arguments in and explain what they think about my --

16      MR. JANEY:  They are not here, your Honor.

17      MR. FINI:  Because I didn't add them yet.

18      MR. JANEY:  They have not been in this case since

19  September of last year.

20      MR. FINI:  That begs the question.  A motion to

21  dismiss was made and an answer and counterclaim were not due.

22      MR. JANEY:  Counsel at the time, if he felt, and I'm

23  not even sure that current counsel is correct on the law, but

24  if Mr. Flocos at K&L Gates believed that that's something that

25  his client should have done, that should have happened then.

1             MR. FINI:  No.

2             MR. JANEY:  This is an issue of delay.

3             MR. FINI:  That's not true.  The motion to dismiss

4     were granted.

5             THE COURT:  Stop.  This is turning into sort of you

6     just having a debate with everybody and talking over everybody.

7     It doesn't work that way and I don't care how long you have

8     been in the case.  You don't get to do that.  OK?

9             MR. FINI:  OK.

10            THE COURT:  Have a seat.

11            MR. FINI:  I apologize.

12            THE COURT:  The bottom line is, I appreciate that new

13    counsel has come in here, but it's new counsel with a very

14    different notion of what this case is about than former

15    counsel.  And the counterclaims are ones that weren't raised

16    before at all.  And you filed this on Saturday, which means

17    nobody has had a lot of opportunity to look at this, and then

18    another letter today literally 40 minutes before I took the

19    bench.  There has not been a lot of time to review any of this.

20    I'm not faulting you.  You got retained and what are you going

21    to do.

22            The bottom line is, I have not heard a good reason to

23    stay this proceeding, to wait to see what goes on in the FINRA

24    arbitration.  It's not clear to me that what goes on there will

25    have any impact on what I'm going to be deciding here and

1    doesn't sound like they are any closer than I am, frankly, to

2    resolving this case.  I would put a dollar down that says I'll

3    resolve this faster than they do.

4         I am not going to stay.  If you want to make a formal

5    motion, you can, but I will tell you I have heard nothing to

6    suggest that a stay is warranted in this case.  I'm almost

7    certain to deny such a motion.

8         In the meantime, we are going to go forward.  The

9    first thing to happen is, an answer to the counterclaims.  And

10   if you are going to amend, I guess you should amend.  You

11   should move quickly on that.

12        And if, Mr. Janie, you don't feel like waiting to make

13   your motion for summary judgment, then you can make it right

14   away.  But I think at the end of the day the motion for summary

15   judgment and the counterclaims are going to be intertwined to

16   some extent.  If I find that the language of the agreement is

17   unambiguous, I suppose I can deal with your motion and then we

18   can deal with the counterclaims after that, or the fact that

19   it's going to take longer to file an amended answer and

20   counterclaims and a little bit of time for you to answer or

21   respond, isn't necessarily going to cripple us with respect to

22   your motion for summary judgment.

23        But I'm also sensitive to the fact that the defendants

24   might be -- I'm not accusing anybody of bad faith, but I'm

25   concerned that this might all be a stall that is going to

1   result in the defendants being utterly judgment proof and in

2   bankruptcy with a stay that freezes us all.  If and when there

3   is such an automatic stay, obviously, I will abide by it.  But

4   I don't have to wait around for that to happen, I don't think.

5         Do you want to make your motion or do you want to wait

6   until after you've had a chance to answer the amended

7   counterclaim?

8         MR. JANEY:  We are going to proceed, your Honor.

9         THE COURT:  When do you want to make it?

10        MR. JANEY:  It will be filed by next Friday.  If I can

11  put my eyeglasses on, I can tell you the exact date.

12        THE COURT:  The 11th.

13        MR. JANEY:  Yes.  Thank you, your Honor.

14        THE COURT:  You mean a week from Friday.

15        MR. JANEY:  Yes, your Honor.

16        THE COURT:  The 11th.  OK.

17        Then, in the meantime, you can amend your answer and

18  counterclaim, and it seems to me your answer and counterclaims

19  will largely be responsive to the motion for summary judgment.

20        MR. FINI:  Your Honor, respectfully, can I please

21  comment.  Respectfully, in light of the defenses that I've

22  asserted, and all of those defenses and counterclaims were

23  timely, a motion to dismiss was made and under the rules --

24        THE COURT:  I get it.

25        MR. FINI:  In light of my defenses and counterclaims,

1    for the plaintiff to make a motion for summary judgment that

2    you decide in the abstract that based on the clear language I'm

3    ruling on summary judgment, for example, that then doesn't take

4    into account my defenses to that very claim.  I honestly have

5    not seen that.

6            Normally, since the summary judgment would have to

7    take into account my defenses and the deposition testimony and

8    the documents about what Mr. Cottam knew and when, and even if

9    the plain reading means something, the counterclaim comes in

10   about mutual mistake.  Those, all for judicial efficiency,

11   would be decided together in one joint summary motion.

12           I think, your Honor, what plaintiff's counsel is

13   proposing would require two sets of summary judgment motions,

14   which all it's going to do to 6D is double and triple my time

15   in the case because I have to respond to his motion without the

16   discovery that I'm saying is the very defense to the motion,

17   and then I'd have to make my motion.

18           THE COURT:  That can be your defense to the motion,

19   that you need additional time for discovery.

20           MR. FINI:  Since we are here and we all know what the

21   issues are, the question is, is that the most efficient way and

22   the best way --

23           THE COURT:  It seems to me that what you are arguing

24   is the most efficient way is to do nothing and wait for FINRA

25   to get around to resolving what appears to me to be a largely

1    unrelated arbitration.

2            MR. FINI:  First there is the stay issue, which we do

3    maintain.  If you deny the stay, and I have to talk to my

4    client about whether to spend the money to make the formal

5    motion, in light of your comments.  Let's say there is no stay.

6    Now we have the issue of, we will have discovery in this case.

7    It will go forward and then there would be, at the end of

8    discovery, cross motions for summary judgment.  That would be

9    the normal procedure.  Why would you have a motion for summary

10   judgment based on a motion to dismiss --

11           THE COURT:  Because he thinks you are all wet and he

12   doesn't want to wait, and I am not sure that he's wrong.  He is

13   basically saying he has got a summary judgment motion that is

14   going to prevail on just the contract.  If that's true, then he

15   shouldn't have to wait.  You've got counterclaims and

16   affirmative defenses that suggest you are going to need some

17   discovery.  You are going to flesh those out.  That can be your

18   response to his motion for summary judgment, that it's

19   premature to do this because I need discovery on the following

20   things.  I guess you can say that.  And you can elaborate on

21   why it is you need it more than you've had a chance to today,

22   and then he can reply and say why that's true or not true or

23   something else.  But at least that way we are back on track,

24   and I don't see how that harms anybody.

25           MR. FINI:  Again, the problem with it is that I then

```
 1   have to submit a set of papers that specifies with more

 2   particularity what I have laid out, your Honor, today, and then

 3   your Honor will have that and then you'll have to decide that

 4   motion.  Unless it's just an abstract motion, you will decide

 5   that motion knowing that we are going through discovery, and

 6   then I am going to rebrief with the deposition transcripts and

 7   the exhibits to the deposition transcripts all of the

 8   information that shows that Cottam knew the number of shares he

 9   got two years before --

10        THE COURT:  I understand this.  That's going to be

11   your response, I think, to his motion, is that it's premature

12   and that you should get discovery first and you will develop

13   that.

14        MR. FINI:  All I'm asking your Honor is, if you can

15   reconsider and set one summary judgment schedule like is done

16   in most cases, that's respectfully my request.

17        THE COURT:  It's only going to be one motion if I

18   agree that we should have discovery first, and I don't think

19   you have made the case for that yet.

20        MR. FINI:  Hold on.  Now I'm confused.  I thought that

21   we were going forward now with discovery.  And that while we

22   were going forward with discovery he could make his motion if

23   he wanted, but I get discovery.

24        THE COURT:  No.  I think he's conceding that your

25   counterclaims would entail some limited amount of discovery.  I
```

1    don't know what that would look like.  He has not seen your

2    full answer yet.  He might say that your answer and

3    counterclaims or that your counterclaims should be dismissed

4    because there is a lack of specificity or lack of factual

5    allegation.  I don't know.

6         But it seems to me we are either going to do this in

7    two stages or one stage after discovery, which you guys don't

8    even agree on what the discovery should be, right?

9         MR. FINI:  Your Honor, we have not served discovery

10   requests and it would be a deposition of Cottam and a document

11   request of the documents that he got.  It would like any other

12   case, the documents that he received in connection with the

13   subscription agreement, the documents that show what he sold it

14   for.

15        THE COURT:  Is there any dispute as to what he sold it

16   for?

17        MR. JANEY:  No, your Honor, there is no dispute.

18   That's why our position is, we are prepared to go ahead and

19   file the Rule 56 motion.  If counsel believes, as your Honor

20   has articulated, that he needs particular things, the

21   opposition will force him to lay those out.  We will then reply

22   to them, and your Honor will determine on the basis of that

23   Rule 56 motion.

24        THE COURT:  At the end of the day it may be that you

25   get exactly what you want.  I say the motion is denied as

1    premature, we are going to have some discovery.  I'll have a

2    better idea of what that discovery will look like and then we

3    will set a discovery schedule.  I don't see the downside of

4    doing it that way.

5         MR. FINI:  Again, what I'm trying to articulate, and

6    I'm not doing a good job, your Honor, is, normally after a

7    motion to dismiss is denied there is a window of discovery and

8    then a summary judgment deadline that's set after the

9    discovery.  I'm having trouble understanding why would there be

10   a summary judgment motion made without a deadline.

11        THE COURT:  Because this would be a summary judgment

12   motion on a contract that requires no extrinsic evidence and

13   requires, therefore, no discovery whatsoever.  He could have

14   made that motion out of the gate but didn't.  I almost made it

15   for him sua sponte but ultimately didn't.

16        But I'm not inclined to say, let's all just wait

17   another six months to figure out what discovery shows, whether

18   there really is an issue as to why he doesn't win on an

19   unambiguous contract.  It seems to me this allows you to make

20   your case as to why there is a need for discovery because I'm

21   not sold on it yet.  It doesn't make him wait around for two,

22   three, or six months.

23        MR. FINI:  I guess my confusion is, if I allege a

24   claim for mutual mistake and unilateral mistake and I plead it

25   with detail and explain to your Honor the mistake that existed

1    and that it was mutual or, if not, it was unilateral, there was

2    deceptive conduct by the fact that he knew what he got, and I

3    this lay this out as best I can, normally I would get some

4    discovery and the client wouldn't need an immediate motion for

5    summary judgment.  It just seems unfair.

6           THE COURT:  This immediate motion for summary judgment

7    I think is going to be pretty short.  It's basically this

8    contract on its face says exactly what the plaintiff believes

9    it says, which is it requires a transfer of a certain number of

10   shares.  And the agreement allowed for stock splits later,

11   after the deal is consummated, but it doesn't contemplate

12   reverse stock splits in advance.  Not sure why.  And so he is

13   saying he wins on the face of the document.  I don't think it's

14   that different than what their briefing was in opposition to

15   your predecessor's motion to dismiss.

16           I don't think it's going to require a whole lot of

17   work.  It's going to require you to articulate why you think

18   you need this additional discovery in light of your

19   counterclaims, what that discovery is, and how that makes the

20   current motion premature.  And maybe I'll agree with you, or

21   maybe you guys will agree among yourselves that there is a

22   certain amount of discovery that you should do that you can

23   agree on.  If that's the case, you can propose it.  But I am

24   not going to wait indefinitely.  If he wants to make a motion,

25   I am going to let him make the motion.

1          MR. JANEY:  Thank you, your Honor.

2          THE COURT:  Let's talk about a schedule for that

3   motion.  You were saying by the 11th of August you are going to

4   file your motion for summary judgment, which I don't expect is

5   going to be terribly long because I think I know what you are

6   going to say.

7          In the meantime, Mr. Fini, you are going to be

8   amending your answer and counterclaims and doing that by when?

9          MR. FINI:  I was going to ask for 21 days to do that.

10          THE COURT:  That's fine.  21 days from today is the

11   21st, and then that will give you two weeks to also respond to

12   his motion.  It will be 30 days to respond to his summary

13   judgment motion, which will be a couple of weeks after you've

14   filed your answer and counterclaims, which I think will inform

15   your opposition briefing.  So you are basically working on both

16   at the same time, but I'll give you a little bit of extra time

17   to do that.  Let me just give you the firm date.  I'll give you

18   until September 8.  That's the Friday of the first week in

19   September after Labor Day just because things can get hairy and

20   people may want to take vacations.  I get that.  Then a reply.

21          MR. JANEY:  We can do the reply two weeks thereafter,

22   your Honor.

23          THE COURT:  That's the 22nd.

24          Maybe in the interim all of this becomes more clear as

25   to what you guys are shooting at.  If that's the case, let me

1    know, but I don't see a downside to doing it this way.  I think

2    at the very least it's going to at least help me narrow the

3    issues.  And if I do conclude that Mr. Fini is right and we

4    need some limited discovery, I will have a better idea as to

5    what that is because that will be the substance of his

6    opposition.

7              It seems to me on the face of the contract Dr. Cottam

8    has the better argument.  That's what I said in my prior order.

9    Maybe you will educate me as to why your counterclaims and

10   limited discovery will require that we put off that motion.

11   You'll get a chance to develop it.  I don't think that's a

12   draconian or particularly onerous schedule.  I think that's

13   legit.

14             Anything else we should cover today?

15             MR. JANEY:  Not today.  Thank you, your Honor.

16             THE COURT:  Once I see the papers, then I can resolve

17   it, and then we will set a discovery schedule as needed or, if

18   it's not needed, then we don't need to do it.

19             In the meantime, keep me posted on what's going on in

20   the arbitration.  Since one of you, at least, thinks it matters

21   to what we are doing here, I guess I should at least be

22   apprised.

23             MR. JANEY:  Yes, your Honor.

24             THE COURT:  Anything else, Mr. Fini?

25             MR. FINI:  No.  I just wanted to thank your Honor for

1   granting me on Monday when I asked for the extension to file

2   the answer.  Your Honor took that immediately and I wanted to

3   thank you because it saved me from having to file the same day,

4   so thank you.

5            THE COURT:  That's fine.

6            I'll issue a short order that just memorializes these

7   dates and then we will see where we are.

8            Thanks a lot.  Enjoy the rest of the summer.

9            I thank the court reporter.  If anybody needs a copy

10  of this transcript, you can take it up with the court reporter

11  later through the website because I am running behind on a

12  couple of other matters.

13           Thank you.

14                              o0o

15

16

17

18

19

20

21

22

23

24

25