UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                      :
JOHN COTTAM,                                          :
                                                      :
                              Plaintiff,              :
                                                      :
              -against-                               :
                                                      :   Case No.  16-CV-04584 (RJS)
GLOBAL EMERGING CAPITAL GROUP,                        :
LLC, ALEXANDER KIBRIK, WILLIAM                        :
UCHIMOTO, 6D GLOBAL                                   :
TECHNOLOGIES, INC., 6D                                :
ACQUISITIONS, INC., and TEJUNE                        :
KANG,                                                 :
                                                      :
              Defendants.                             :
------------------------------------------------------------ x


## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT


GOTTLIEB & JANEY LLP
111 Broadway, Suite 701
New York, New York 10006
Tel.: (212) 566-7766
Fax: (212) 374-1506

*Attorneys for Plaintiff*
*John Cottam*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................iii

PRELIMINARY STATEMENT.…………... ......................................................1

FACTUAL AND PROCEDURAL BACKGROUND…………………….…………...2

ARGUMENT.………………………………..……………………………………3

    I.    THE LEGAL STANDARD FOR SUMMARY JUDGMENT IS CLEAR
        AND DR. COTTAM MEETS THE REQUISITE BURDEN UNDER THE
        LAW FOR THIS COURT TO GRANT THE INSTANT MOTION.….………3

    II.    UNDER THE LAW, WHERE THERE IS AN UNAMBIGUOUS
        CONTRACT, THE PLAIN MEANING CONTROLS AND EXTRINSIC
        MATERIAL IS IRRELEVANT.………………….……………………..…..5

    III.    DEFENDANTS' EFFORTS TO, IN EFFECT, REDRAFT THE PLAIN
        READING OF THIS CONTRACT IN LIGHT OF THIS LITIGATION IS
        UNSUPPORTED BY THE LAW.………………………………...………….8

    IV.    DR. COTTAM IS ENTITLED TO A DAMAGE AWARD BASED ON
        "EXPECTATION DAMAGES" -- THE MEASURE OF DAMAGES
        APPLICABLE IN THE SECOND CIRCUIT………………………………14

CONCLUSION.………………………………………………………………17

# <u>TABLE OF AUTHORITIES</u>

Page

**<u>Rules and Statutes</u>**

Fed. R. Civ. P. 56(a)...…………………………………………………………3

**<u>Cases</u>**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...…………………………………………………………4

*AT&T Corp. v. Publishing Concepts L.P.*,
No. 08 Civ. 7658(DC), 2010 WL 1191380 (S.D.N.Y. Mar. 29, 2010)…………...… …………4

*Bank of America, N.A. v. Farley*,
No. 00 Civ. 9346(DC), 2002 WL 5586 (S.D.N.Y. Jan. 2, 2002)……………………….. ….4

*Baraliu v. Vinya Capital, L.P.*,
765 F.Supp.2d 289 (S.D.N.Y. 2011)...…………………………………………………4

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*,
773 F.3d 110 (2d Cir. 2014)...…………………………………………………...8

*Chimart Assoc. v. Paul*,
66 N.Y.2d 570 (1986)………………….....……………………………………...9

*Coventry Enterprises LLC v. Sanomedics Int'l Holdings, Inc.*,
191 F.Supp.3d 312 (S.D.N.Y. 2016) …………………………………………...........15

*Deutsche Bank Securities, Inc. v. Rhodes*,
578 F.Supp.2d 652 (S.D.N.Y. 2008)...…………………………………………1, 5

*Fincher v. Depository Trust & Clearing Corp.*,
604 F.3d 712 (2d Cir. 2010)...…………………………………………………4

*In re: Musicland Holding Corp. v. Wachovia Bank, N.A.*,
374 B.R. 113 (Bankr. S.D.N.Y. 2007)…………….....……………………………11

*In re: Residential Capital, LLC v. Wells Fargo, N.A.*,
531 B.R. 25 (Bankr. S.D.N.Y. 2015)...…………………………………………9

**Page**

<u>**Cases Cont'd**</u>

*J.R. Loftus, Inc. v. White,*
85 N.Y.2d 874 (1995)...……………….………………….....................................15

*Kovens v. Paul,*
No. 04 Civ. 2238(TPG), 2009 WL 562280 (S.D.N.Y. Mar. 4, 2009)...………... ……….……...14

*Morlee Sales Corp. v. Manufacturers Trust Co.,*
9 N.Y.2d 16 (1961)……………….......……………………………………………9

*Oscar Gruss & Son, Inc. v. Hollander,*
337 F.3d 186 (2d Cir. 2003)……………….……………………....................................15

*Rahl v. Bande,*
328 B.R. 387 (Bankr. S.D.N.Y. 2005)……………….......……………………………12

*Reiss v. Fin. Performance Corp.,*
97 N.Y.2d 195 (2001)……………………………………………………….....12, 13-14

*Rexnord Holdings, Inc. v. Bidermann,*
21 F.3d 522 (2d Cir. 1994)...……………………………………………………….3, 5

*Schmidt v. Magnetic Head Corp.,*
97 A.D.2d 151 (2d Dep't 1983)...……………………………………………………9

*Seiden Assocs., Inc. v. ANC Holdings, Inc.,*
959 F.2d 425 (2d Cir.1992)……………………………………………………….1, 14

*Sharma v. Skaarup Ship Mgmnt. Corp.,*
916 F.2d 820 (2d Cir. 1990) ……………...……………………....................................15

*Simon v. Electrospace Corp.,*
28 N.Y.2d 136 (1971)...…………………………………………....................................15

*Tycoons Worldwide Group (Thailand) Public Co. Ltd. v. JBL Supply Inc.,*
721 F.Supp.2d 194 (S.D.N.Y. 2010)...…………………………………………………3, 4

iv

## PRELIMINARY STATEMENT

The plaintiff, Dr. John Cottam ("Plaintiff"), moves this Court to grant the instant motion for summary judgment to hold the Defendants liable in connection with his well-pleaded breach of contract claim. There are no genuine issues of material fact in this case. The defendants 6D Global Technologies, Inc., 6D Acquisitions, Inc., and Tejune Kang (collectively, "Defendants") cannot present any fact that would change the outcome for their liability under the subject contract because no such facts exist. Any and all arguments advanced by Defendants, whether through their prior counsel or newly substituted counsel, fail to have consequence for this application and, under the law, cannot, as elaborated herein.

In situations such as the matter pending before this Court, where the contract is unambiguous and Defendants concede as much, the law in the Second Circuit supports Dr. Cottam's motion. When the question is the contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992). *See also Deutsche Bank Sec.*, 578 F.Supp.2d 652, 661 (S.D.N.Y. 2008) ("The rules of contract interpretation are well-settled and are set forth in the summary judgment context in [*Seiden*]."). Such is the case here.

Even though Defendants already concede to this Court that the subject contract, as written, supports Dr. Cottam's interpretation of the contract, they insist on advancing futile defenses in order to obfuscate, cause delay and frustrate Dr. Cottam's inevitable judgment. However, as the subject contract is unambiguous, the Court never reaches Defendants' defense of mistake and other such claims. They are irrelevant under the law as it applies here.

## FACTUAL AND PROCEDURAL BACKGROUND

For the sake of brevity, we respectfully refer the Court to the lengthy record and prior pleadings and submissions for a full and complete background of this action, including and, in particular, Dr. Cottam's opposition to the motion to dismiss. (ECF Doc. 48.) Nevertheless, for purposes of the instant motion for summary judgment, Plaintiff respectfully emphasizes the following points of reference:

First, there is a legally binding contract between Dr. Cottam and Defendants, *i.e.*, the Subscription Agreement. (*See* Affidavit of Dr. John Cottam ("Cottam Aff."), Ex. A (Subscription Agreement).) Under the Subscription Agreement's clear terms, Dr. Cottam was to purchase 58 Units (representing 2,900,000 shares) of 6D Acquisitions common stock for $870,000.00. (*See* Cottam Aff., Ex. A, at p. 17.) These shares would then be "automatically" converted into shares of 6D Global on a 1:1 basis. (*See* Cottam Aff., Ex. A, at p. 3, § 1(b).) The Defendants acknowledge the contract and its terms as written. (*See* Declaration of Derrelle M. Janey, Esq. ("Janey Dec."); Ex. 1 (Sept. 14, 2016 Conference Transcript), at 10:1-2; Ex. 2 (July 31, 2017 Conference Transcript), at 12:12-18).) Additionally, the Defendants have never denied and it is indisputable that Dr. Cottam paid the monies required under the contract, and, thus, performed based on its terms. (*See* Janey Dec., Ex. 1, at 23:7-12.) Further, as this dispute demonstrates, Dr. Cottam alleges that the Defendants failed to provide him with 2,900,000 shares in accordance with the plain terms of the Subscription Agreement. (*See* ECF Doc. 48 (Opp. to Motion to Dismiss), at 4.)

Second, with respect to procedural background prior to the instant motion, on September 21, 2016, Defendants moved to dismiss Dr. Cottam's complaint wherein he alleged breach of contract for Defendants' failure to provide the agreed upon number of shares in 6D Global, or,

2

in the alternative, securities fraud. This Court denied Defendant's motion and also reached a finding that the Subscription Agreement is unambiguous and that Dr. Cottam is likely to succeed on the breach of contract claim. (ECF Doc. 53.)

## ARGUMENT

### I. THE LEGAL STANDARD FOR SUMMARY JUDGMENT IS CLEAR AND DR. COTTAM MEETS THE REQUISITE BURDEN UNDER THE LAW FOR THIS COURT TO GRANT THE INSTANT MOTION

Federal Rules of Civil Procedure Rule 56(a) directs the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a) (Thomson Reuters/West 2017).

First, "the moving party must demonstrate that no genuine issue exists as to any material fact." *Tycoons Worldwide Group (Thailand) Public Co. Ltd. v. JBL Supply Inc.*, 721 F.Supp.2d 194, 198 (S.D.N.Y. 2010) (citation omitted). "[T]he district court must assess the evidence in the light most favorable to the non-moving party, and resolve all ambiguities, and 'draw all reasonable inferences' in its favor." *Id.* "As to an issue on which the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by showing – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the moving party satisfies its burden of proof, "the non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Tycoons*, 721 F.Supp.2d at 194 (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994).

"The nonmoving party may not rely on conclusory allegations to create disputed factual issues." *Bank of America, N.A. v. Farley*, No. 00 Civ. 9346(DC), 2002 WL 5586, at *3 (S.D.N.Y. Jan. 2, 2002); *see also Tycoons*, 721 F.Supp.2d at 198 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial."). The nonmoving party's burden "cannot be satisfied by statements made upon information and belief." *Baraliu v. Vinya Capital, L.P.*, 765 F.Supp.2d 289, 293 (S.D.N.Y. 2011).

"To defeat a motion for summary judgment, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *AT&T Corp. v. Publishing Concepts L.P.*, No. 08 Civ. 7658(DC), 2010 WL 1191380, at *3 (S.D.N.Y. Mar. 29, 2010). "As the Court held in *Anderson*, '[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.* (quoting *Anderson*, 477 U.S. at 249-50).

"An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citation omitted). "Accordingly, the Court's task is not to '**weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial**.'" *AT&T Corp.*, 2010 WL 1191380, at *3 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (emphasis added). A fact is material if it might affect the outcome of the suit under the governing law. *Fincher*, 604 F.3d 712, 720.

On a breach of contract claim, the plaintiff must show that there is no genuine issue of material fact with respect to the standard elements for the cause of action. Here, those elements

are the following: (1) the existence of a contract; (2) performance by one party; (3) breach by the other party; and (4) damages. *See Rexnord Holdings, Inc. v. Bidermann*, 421 F.3d 522, 525 (2d Cir. 1994). Dr. Cottam unquestionably meets this burden. Here, with respect to the plaintiff's breach of contract claim, there is no fact or defense that might be introduced by the Defendants that would change the outcome for their liability under contract law in this circuit. The Defendants concede the contract's existence; acknowledge Dr. Cottam's performance under the terms of the contract; admit that they did not provide Dr. Cottam with the number of shares determined by the plain reading of the contract itself; and Dr. Cottam has alleged and demonstrated that he was damaged as a result of Defendants' failure. (*See* Janey Dec., Ex. 1 (Sept. 14, 2016 Conference Transcript), at 10:1-2, 11:14-20, 13:12-24, 14:5-15:9, 23:7-12, 25:1-9, 26:11-15; Ex. 2 (July 31, 2017 Conference Transcript), at 12:12-18, 13:8-16, 15:14-16:6.) **The lack of dispute as to these material issues leads squarely to Dr. Cottam being entitled to judgment as a matter of law.**

## II.   UNDER THE LAW, WHERE THERE IS AN UNAMBIGUOUS CONTRACT, THE PLAIN MEANING CONTROLS AND EXTRINSIC MATERIAL IS IRRELEVANT

The contract at issue in this case is an unambiguous contract and, for that reason alone, under the circumstances here, supports Dr. Cottam's instant application for summary judgment. In a breach of contract action, summary judgment is appropriate if the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." *Deutsche Bank Securities, Inc. v. Rhodes*, 578 F.Supp.2d 652, 659 (S.D.N.Y. 2008). Here, first, it is worth noting that this Court has already found "the contract at issue in this case to be unambiguous" at ruling upon defendants' motion to dismiss. (ECF Doc. 53.) That said, to iterate some of Plaintiff's argument during the motion to dismiss briefing, we respectfully submit the following:

5

Dr. Cottam was presented by his broker with a document dated June 17, 2014 entitled "Confidential Subscription Documents."   (*See* Cottam Aff., Ex. A.)   Included within the Subscription Documents was a subscription agreement (the "Subscription Agreement"), which set forth the terms of the Offering.   (*Id.,* at p. 1.)

The Offering was an investment in Defendant 6D Acquisitions, a "special purpose vehicle" created for the purpose of investing in the reorganized company (Defendant 6D Global) following a share exchange between the companies Clean Tech and Six Dimensions (the "Share Exchange").   (*Id.*, at p. 2.)   The stated purpose of the Offering was to infuse capital of between a minimum of $3,000,000 and a maximum of $5,100,000 into 6D Global.   (*Id.,* at p. 3, § 1(c).)   The successful completion of the Offering was a mandatory prerequisite to the consummation of the Share Exchange.   (*Id.,* at p. 4-5, § 3.)

As described in the Subscription Agreement, the contemplated Share Exchange was for Clean Tech to issue approximately 50 percent of its outstanding shares of common stock to the shareholders of Six Dimensions in exchange for all of Six Dimensions' outstanding shares, the net result of which was to render Six Dimensions a wholly-owned subsidiary of Clean Tech. (*Id.*, at p. 2-4.)   Pursuant to the Offering, investors could purchase "Units" for $15,000.00 per Unit with each Unit consisting of fifty-thousand (50,000) shares of 6D Acquisitions common stock.   (*Id.*, at p. 3, § 1(a).)

The terms of the Subscription Agreement were unequivocal: for every one share of 6D Acquisitions stock purchased through the Offering, the investor would receive one share of 6D Global stock.   (*Id.*, at p. 3, § 1(b).)   In particular, the Subscription Agreement provided:

> Immediately upon the closing and effectiveness of the Share Exchange, each share of Common Stock underlying the Units purchased herein shall be automatically converted on a 1:1 basis into shares of [6D Global's] Nasdaq listed common stock (the

> "Financing Security Exchange], such shares shall be distributed to the Subscribers herein and [6DAcquisitions]shall subsequently be divided.

(*Id.*)  The Subscription Agreement also similarly stated:

> WHEREAS, upon completion of the Offering and immediately upon the closing of the Share Exchange, all of the Company's common stock underlying the Units (as defined herein) offered hereby will be automatically exchanged into shares of [6D Global] on a 1:1 basis.

(*Id.*, at p. 3.)

Importantly, under the clear terms of the capitalization table described in the Subscription Agreement, *upon the capital raise (i.e., upon raising the maximum offering of $5.1 million)*, approximately 536 million shares were to be issued and outstanding.  Of those, 17 million shares were to be designated for investors in the offering.  On or about September 18, 2014, relying, *inter alia*, on the clear terms of the Subscription Agreement, Dr. Cottam signed the Subscription Agreement to purchase a total of 58 Units for $870,000, representing 2,900,000 shares of 6D Acquisitions common stock.  (*See* ECF Doc. 1 (Complaint), at ¶ 26.)

On or about September 25, 2016, Dr. Cottam caused $870,000 to be wired to the escrow agent identified in the Subscription Documents.  *Id.*  On September 29, 2014, CleanTech and Six Dimensions merged pursuant to a reverse merger.  (*Id.*, at ¶ 28.)  Although Dr. Cottam should have received 2,900,000 shares of 6D Global following the merger, Dr. Cottam instead received a total of only 420,290 shares of 6D Global.  (*Id.*, at ¶ 30.)  In other words, Dr. Cottam received 2.47 million fewer shares in 6D Global than he should have.  Given the unambiguous contract, the additional factual background Defendants submit as an excuse for their breach is irrelevant and inconsequential to judgment as a matter of law here.  That the Defendants might

have made a printing error is inconsequential.  That Defendants hired lawyers that might have drafted the Subscription Agreement in ways that did not inure to the benefit of their client is irrelevant.  (*See* Janey Dec., Ex. 2 (July 31, 2017 Conference Transcript), at 12:12-18, 15:14-24.) That newly substituted counsel might raise new (and generally similar) legal theories that prior counsel allegedly forgot to mention is irrelevant (*Id.*, at 12:2-6.)  That other investors might also have a claim against the Defendants based on the plain reading of the contract is irrelevant as to whether Dr. Cottam has a claim for summary judgment under the law on his breach of contract claim (*Id.*, at 15:25-16:6.)  For the purposes of summary judgment adjudication, none of those facts, even if true, change any aspect of this litigation simply because they do not change any aspect of the outcome of Dr. Cottam's breach of contract claim.

## III.  DEFENDANTS' EFFORTS TO, IN EFFECT, REDRAFT THE PLAIN READING OF THIS CONTRACT IN LIGHT OF THIS LITIGATION IS UNSUPPORTED BY THE LAW

Despite the Court's ruling on the motion to dismiss briefs, the Defendants continue to insist that the Court must look beyond the four corners of this contract and, upon doing so, suggest that somehow the court will then find that there are genuine issues of material fact. However, this approach is simply not permitted under longstanding New York contract law.

As stated herein above, and in the plaintiff's opposition to the motion to dismiss (ECF Doc. 48), when interpreting a contract, "[the Court's] primary objective is to give effect to the intent of the parties as revealed by the language of their agreement.  The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions."  *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014).  Thus, "[i]f the terms of the contract are complete, clear and unambiguous on their face, they must be enforced according to the plain

meaning of their terms." *In re: Residential Capital, LLC v. Wells Fargo, N.A.*, 531 B.R. 25, 42 (Bankr. S.D.N.Y. 2015). "It is fundamental that courts enforce contracts and do not rewrite them. 'The courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.'" *Schmidt v. Magnetic Head Corp.*, 97 A.D.2d 151, 157 (2d Dep't 1983) (quoting *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 19 (1961)).

A party to a contract may not compel the Court to, in effect, rewrite the contract *ex post* simply because the party now finds compliance with the agreed upon terms undesirable. *See Residential Capital*, 531 B.R. at 45 ("[a party] cannot now renegotiate the terms of the contract for which it bargained simply because things did not turn out favorably for it"). Again, New York precedent firmly establishes that when a contract is unambiguous, it may not be interpreted by resort to extrinsic evidence. *See, e.g., Chimart Assoc. v. Paul*, 66 N.Y.2d 570, 572-73 (**"[i]nterpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument**") (emphasis added.)

Here, the Defendants' argument that a genuine issue exists because they did not actually *intend* to provide Dr. Cottam with the level of shares described by the Subscription Agreement fails because it would require the Court to substantially rewrite a plain language contract. The Subscription Agreement clearly and unequivocally provides that any shares in 6D Acquisitions that Dr. Cottam had purchased pursuant to the Offering (the 2,900,000 shares) would automatically convert into shares of 6D Global on a 1:1 basis, entitling him to precisely 2,900,000 shares of 6D Global. (*See* Cottam Aff., Ex. A, at p. 3.)

Alternatively, the defendants have advanced a theory that there was no breach supposedly because Dr. Cottam received a 0.54 ownership interest in 6D Global purportedly promised in the Subscription Agreement.  As plaintiff has previously described (*see* ECF Doc. 48 (Opp. to Motion to Dismiss)), this strained interpretation of the Subscription Agreement would require the Court to substantially rewrite the contract to include language that conflicts with its otherwise clear and unambiguous terms, a result which is impermissible under the law.

Neither of these arguments survives a motion for summary judgment because, as the Court is aware, and as further described below, **Defendants have conceded numerous times that the plain language of the Subscription Agreement unambiguously supports Dr. Cottam's position, *i.e.*, that he was entitled to 2,900,000 shares**.  Specifically, at the court conference held on September 14, 2016, counsel for Defendants stated: "[I]ndeed, to interpret this agreement in the fashion advocated by the plaintiff, yes, I agree.  Read literally, that's what it says[.]"  (*See* Janey Dec., Ex. 1, at 26:11-13.)  Defense counsel also explicitly conceded that the text of the Subscription Agreement does not support their contention that Dr. Cottam was entitled to a percentage ownership in the reorganized entity as opposed to a discrete number of shares based on a 1:1 exchange ratio.   When this Court observed that such an interpretation based on percentage ownership "isn't what the agreement says," defense counsel agreed, "[i]t does not say that," and continued to argue unpersuasively that some alternative reading should apply.  (*Id.*, at 25:1-9.)  Similarly, Defendants' counsel agreed that the Subscription Agreement did <u>not</u> contemplate the possibility of a reverse stock split prior to the consummation of the share exchange on a 1:1 basis.  (*Id.*, at 11:14-20.)  Moreover, the Court's commented that an investor under the Subscription Agreement would be "subject to the same reverse [stock split] as every

other shareholder, but that's already *after* they got their one for one [exchange]." Defendants' counsel agreed, "That is according to the document, yes." (*Id.* (emphasis supplied).)

The Subscription Agreement expressly, exclusively and consistently describes the transaction in terms of discrete numbers of shares of the relevant companies. (*See* Cottam Aff., Ex. A, at p.3, § 1(a) ("This Subscription Agreement is for the purchase of subscription units (the "Units"), each Unit to consist of fifty thousand (50,000) shares of [6D Acquisition's] common stock, par value $0.001 per share. The purchase price for each Unit shall be fifteen thousand dollars ($15,000)[.]").) The Defendants do not cite – nor can they – one instance in the Subscription Agreement in which it describes these transactions in terms of proportional interests in ownership, as Defendants seem to claim is – or should be – the case. In fact, by the terms of the Subscription Agreement, Dr. Cottam's investment in 6D Acquisitions **had no relationship** with the value of 6D Global and/or CleanTech. (*Id.*, at p.9 ("The offering price of the Units was determined arbitrarily. The offering price of the Units does not... necessarily reflect the market price of CleanTech's common stock.").) The Defendants' interpretation conditioning their performance based on a contrived ownership percentage simply turns the Subscription Agreement on its head and must be rejected by this Court.

Because the Subscription Agreement is unambiguous on its face, the Defendants' attempt to evade or modify its enforcement by claiming that its plain meaning does not represent the actual intent of the parties must fail. *See In re Musicland Holding Corp. v. Wachovia Bank, N.A.*, 374 B.R. 113, 121 (Bankr. S.D.N.Y. 2007) (holding that if one party harbored an expectation that was secret at the time of contracting, and which contradicts the language agreed upon, "the court cannot rewrite the contract to fulfill their unspoken expectation"). This is especially true because the Defendants are sophisticated in business transactions and understand

11

the complex nature of securities transactions. *See Rahl v. Bande*, 328 B.R. 387, 401 (Bankr. S.D.N.Y. 2005) ("[I]t is well settled that where the meaning of an agreement among sophisticated parties is unambiguous on its face, the agreement does not become ambiguous simply because one of the parties later asserts that it intended a different interpretation").

Additionally, the Defendants' other argument suggesting that the contract should not be interpreted as written because it would create a "windfall" for Dr. Cottam is also troubling. The Offering was, by its very nature, "highly speculative" and "involve[d] a high degree of risk." (Cottam Aff., Ex. A, at p. 5.) Indeed, the very reason why an investor such as Dr. Cottam would enter into such a risky investment as the Offering is to reap a potential windfall. Here, both parties entered into the Subscription Agreement understanding that it involved a great deal of risk, and now the Defendants wish to deny Dr. Cottam the return to which he is legally entitled based on the agreement because, as they allege, it is a "windfall."

However, New York's Court of Appeals has squarely rejected the Defendants' argument under extremely similar circumstances. *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195 (2001). In *Reiss*, the defendant, Financial Performance Corporation ("Financial"), had issued warrants to plaintiffs to purchase a specific quantity of shares of its common stock at a particular price. Subsequent to the issuance of the warrants, Financial underwent a reverse stock split. After the reverse stock split, the holders of the warrants (the plaintiffs) sought to execute them, but Financial refused to honor the warrants as written, claiming that the quantity of shares expressly provided for in the warrants had to be adjusted in proportion to the reverse stock split in order to avoid creating a windfall for the plaintiffs. *Reiss*, 97 N.Y.2d at 197-201.

The Court found the warrants were enforceable as written as there was no ambiguity in their terms. In rejecting the defendant's claim that to enforce the warrants as written would

create a windfall for the plaintiffs, the Court noted that the parties must have foreseen the possibility of a reverse stock split because the defendants had included reverse split adjustment provisions in warrant agreements with other investors. The Court concluded that the defendants must have purposefully omitted these provisions in their agreements with the plaintiffs. *Id.* at 199-200.

"[T]his Court will not imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made, must have foreseen the contingency at issue and the agreement can be enforced according to its terms." *Id.* The Court went on to explain:

> It may be that [the warrant-holder] would be entitled to a remedy if Financial performed a forward stock split, on the theory that he did not intend to acquire nothing. We should not assume that one party intended to be placed at the mercy of the other. *It does not follow, however, that Financial should be given a comparable remedy to save it from the consequences of its own agreements and its own decision to perform a reverse stock split.*

*Id.* at 201 (internal citations omitted) (emphasis added).

Here, the Defendants, the drafters of the Subscription Agreement, certainly foresaw the possibility of a reverse stock split because the Subscription Agreement specifically provides that Dr. Cottam's shares of 6D Global would be subject to possible future reverse splits *upon completion* of the Share Exchange. (*See* Cottam Aff., Ex. A, p. 3.) Certainly, had the Defendants wanted to subject the number of shares in 6D Global obtained pursuant to the Offering to prior reverse splits, they had the opportunity to do so when they drafted the Subscription Agreement.

As in *Reiss*, the Court here should not "imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made,

… and the agreement can be enforced according to its terms." *Id.* at 199.  Nor should the Court save the Defendants from "the consequences of [their] own agreements..." *Id.* at 201.

These are the cases plaintiff presented at the motion to dismiss stage of this case and their reasoning is no less powerful and relevant at this stage.   These principles of law are beyond cavil. In fact, speaking specifically on point to the type of issue before this Court, the Second Circuit, in pertinent part, stated the following in *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992): "In reviewing a written contract, a trial court's primary objective is to give **effect to the intent of the parties as revealed by the language they chose to use**.  When the question is the contract's proper construction, **summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity**." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425. 428 (2d Cir. 1992) (emphasis added).

## IV.   DR. COTTAM IS ENTITLED TO A DAMAGE AWARD BASED ON "EXPECTATION DAMAGES" -- THE MEASURE OF DAMAGES APPLICABLE IN THE SECOND CIRCUIT

Under the law of the Second Circuit, Dr. Cottam is entitled to damages in the amount of what he expected to receive when he signed the Subscription Agreement.   On that basis, at minimum, he was entitled to $25,056,00.00 at the end of March 2015, six months after he should have received all of the promised 2.9 million shares in 6D Global.  Of course, Dr. Cottam did receive 420,290 shares; however, the sale transaction in connection with those particular shares only generated $941,449.60 when he was finally permitted to sell in August 2015, after months of further delay.  (*See* ECF Doc. 1 (Complaint), at ¶ 64.)  Dr. Cottam, therefore, suffered a loss of at least **$24,114,550.40**.  This is not a "windfall" – this is the law.

The standard measure of damages in a breach of contract case is expectation damages. *E.g.*, *Kovens v. Paul*, No. 04 Civ. 2238(TPG), 2009 WL 562280, at *4 (S.D.N.Y. Mar. 4, 2009)

(citing *J.R. Loftus, Inc. v. White*, 85 N.Y.2d 874, 877 (1995)).   Expectation damages are "determined by the loss sustained or gain prevented at the time and place of breach ... [t]he rule is precisely the same when the breach of contract is nondelivery of shares of stock." *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145 (1971).   Under an expectation theory, "[t]he calculation of damages in a breach of contract case...is guided by two fundamental principles.   First, 'damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *Coventry Enterprises LLC v. Sanomedics Int'l Holdings, Inc.*, 191 F.Supp.3d 312, 321 (S.D.N.Y. June 8, 2016) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)).   "Second, 'New York courts are clear that breach of contract damages are measured from the date of the breach.'" *Id.* (quoting *Oscar Gruss & Son*, 337 F.3d at 196).   "It is also fundamental that, where the breach involves the deprivation of an item with a determinable market value, the market value at the time of the breach is the measure of damages." *Id.* (quoting *Sharma v. Skaarup Ship Mgmnt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990)).

Plaintiff arrives at the minimum expectation damages award based on the publicly listed trading value of 6D Global on the first date at which Dr. Cottam should have been permitted to sell his shares pursuant to the terms of the Subscription Agreement.   In September 2014, when Dr. Cottam received 420,290 shares in 6D Global 2,4769,710 short of the shares he was promised – 6D Global was trading at $8.30/share.   (*See* ECF Doc. 1, at ¶ 54.)   Due to a restriction in the agreement, he was prohibited from selling any shares for six months.   (*Id.*, at ¶ 56.)   When the restriction expired on March 30, 2015, 6D Global was trading at $8.64/share. (*See* Janey Dec., Ex. 3.[1])   Therefore, on this date, Dr. Cottam should have been able to sell the

---

[1] Plaintiff respectfully requests that the Court take judicial notice of the historic stock prices for

2.9 million shares – the number of shares he bargained for and intended to purchase under the Subscription Agreement – for a total of $25,056,000.00.

Indeed, from April 2015 through August 2015, Dr. Cottam attempted to have the restrictions lifted in order to dispose of what shares he did possess (*See* ECF Doc. 1, at ¶ 62.) However, he was stalled, misled and prevented from doing so until August 2015, when he was finally able to sell his 420,290 shares at $2.24/share, generating $941,449.60.  (*Id.*, at ¶ 64.) Plaintiff subtracts this amount from what he should have received from sale of all 2.9 million shares in March 2015 to arrive at an "expectations" based damages award of **$24,114,550.40**. Again, this is not a windfall but the appropriate result under clearly established New York State contract law.

---

6D Global, which are publicly available from a number of sources including http://www.nasdaq.com/symbol/sixd/historical.

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that this Court grant Dr. Cottam's motion for summary judgment holding the Defendants liable under Plaintiff's breach of contract claim as a matter of law.

Dated:        New York, New York
             August 11, 2017

                                        Respectfully Submitted,

                                        Derrelle M. Janey, Esq.

                                        GOTTLIEB & JANEY LLP
                                        Trinity Building
                                        111 Broadway, Suite 701
                                        New York, NY 10006
                                        Tel.:    (212) 566-7766
                                        Fax:     (212) 374-1506
                                        Email: djaney@gottliebjaney.com

                                        *Counsel for Plaintiff*
                                        *John Cottam*