**EUNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————x

JOHN COTTAM,

                        Plaintiff,              16 CV 04584 (RJS)

        v.

GLOBAL EMERGING CAPITAL GROUP, LLC,
ALEXANDER KIBRIK, WILLIAM UCHIMOTO,
6D GLOBAL TECHNOLOGIES, INC.,
6D ACQUISITIONS, INC., and TEJUNE KANG,

                   Defendants.
————————————————————————————x

## 6D DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR ATTACHMENT

CATAFAGO FINI LLP
The Empire State Building
350 Fifth Ave., Suite 7710
New York, NY  10118
Tel.: (212) 239-9669

# **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 5

  I.   Plaintiff Has Not Met the Heavy Burden of Proving a Right to an Attachment ................ 5

    A.   The Strict Standard Applicable to Obtain the Extraordinary Relief of Attachment..... 5

    B.   Plaintiff Has Not Met the Strict Standard of CPLR § 6201(3).................................... 7

      1.  Plaintiff Has Not Proven Any Actual, Planned or Imminent, Transfer or Dissipation of Assets Outside the Ordinary Course of Business ........................................ 7

      2.  Plaintiff Has Not Satisfied CPLR § 6201(3) Because He Has Not Proven that the 6D Defendants Acted With Fraudulent Intent ........................................................ 9

      3.  The Plaintiff's Concerns About the Financial Conditions of the Company Are Not a Basis for the Attachment of a Company ..................................................... 12

    C.   Plaintiff Cannot Show Probability of Success on the Merits, as Required by CPLR § 6212(a) ........................................................................................................ 15

    D.   Plaintiff Does Not Have a Compelling Need for an Attachment ............................. 16

    E.   Plaintiff is not Entitled to an Attachment Against Tejune Kang, Who Signed the Subscription Agreement in His Official Capacity, or 6D Global Technologies, Inc., Who is Not a Signatory to the Agreement…………………………………………………………..18

  II.   Appointment of a Receiver Under FRCP Rule 66 Would be Improper....................... 19

  CONCLUSION.................................................................................................................. 22

# Table of Authorities

**Cases**

*Abacus Federal Sav. Bank v. Lim*, 8 A.D.3d 12 (1st Dep't 2004) .................................................. 9

*Amalgamated Consultants Ltd. v. De Savary*, 1985 WL 3044 (S.D.N.Y. Oct. 8, 1985) .............. 16

*Ames v. Clifford*, 863 F. Supp. 175 (S.D.N.Y. 1994) ........................................................ 3, 12, 14

*Apple Mortgage Corp. v. Barenblatt*, 162 F. Supp. 3d 270 (S.D.N.Y. 2016) .............................. 10

*Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326 (2d Cir. 1983) ................................................. 12

*Buy This, Inc. v. MCI Worldcom Communic'ns, Inc.*, 178 F.Supp.2d 380 (S.D.N.Y. 2001) ...........
................................................................................................................................... 6, 7, 8, 14

*Chevron Corp. v. Donziger*, 840 F.Supp.2d 773 (S.D.N.Y. 2012) ............................................. 13

*Cont'l Chartering & Brokerage, Inc. v. T.J. Stevenson & Co.*, 678 F. Supp. 58 (S.D.N.Y. 1987).
................................................................................................................................................ 12

*DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F.Supp.2d 308 (E.D.N.Y. 2009) ........... 4, 5, 10

*Eaton Factors Co. v. Double Eagle Corp.*, 17 A.D.2d 135 (1st Dep't 1962) ............................... 10

*Encore Credit Corp. v. LaMattina*, 2006 WL 148909 (E.D.N.Y. Jan. 18, 2006) ............. 2, 8, 9, 11

*Filmtrucks, Inc. v. Earls*, 635 F. Supp. 1158 (S.D.N.Y. 1986) .................................................... 8

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ............ 19

*Intl. Fid. Ins. Co. v. Tsapakis Const. Corp.*, 1988 WL 86684 (E.D.N.Y. Aug. 17, 1988 ...............
.......................................................................................................................................... 15, 16

*Key Equip. Fin. Inc. v. Zip, L.L.C.*, 2007 WL 1580035 (N.D.N.Y. May 29, 2007) ..................... 12

*Man Wei Shiu v. New Peking Taste Inc.*, 2013 WL 4046382 (E.D.N.Y. Mar. 14, 2013) ............ 12

*Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186 (S.D.N.Y.
Aug. 11, 2006) ................................................................................................................ 4, 6, 8

*Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186 (S.D.N.Y.
Aug. 11, 2006) ................................................................................................................... 9, 10

*National Audubon Soc., Inc. v. Sonopia Corp.*, 2009 WL 636952 (S.D.N.Y. March 6, 2009) ...... 4

*Natl. Audubon Soc., Inc. v. Sonopia Corp.*, 2009 WL 636952 (S.D.N.Y. Mar. 6, 2009) .............. 5

*Northeast United Corp. v. Lewis*, 137 A.D.3d 1387 (3rd Dep't 2016) .................................. 10, 12

*Owens v. Gaffken & Barriger Fund LLC*, 2009 WL 773517 (S.D.N.Y. Mar. 24, 2009) ................
.......................................................................................................................................... 15, 16

*Reiss v. Financial Performance Corporation*, 97 N.Y.2d 195 (2001) ........................................ 15

*Securities and Exch. Commn. v. Republic Nat. Life Ins. Co.*, 378 F. Supp. 430 (S.D.N.Y. 1974)15

*Silverman v. Miranda*, 116 F. Supp. 3d 289 (S.D.N.Y. 2015); ........................................ 6, 8, 13

*Stand. Dyeing and Funishing Co. v. Arma Textile Bonding Co.*,1986 WL 272 (S.D.N.Y. Aug. 4,
1986) ................................................................................................................................... 6

*Strategic Growth Intern., Inc. v. RemoteMDx, Inc.*, 2008 WL 4179235 (S.D.N.Y. Sept. 10, 2008)
.......................................................................................................................................... 8, 12

*Trigo Hnos., Inc. v. Premium Wholesale Groceries, Inc.*, 424 F.Supp. 1125 (S.D.N.Y. 1976) ... 14

*Wen v. CT & TC Corporation*, 2017 WL 59082 (E.D.N.Y. Jan. 5, 2017) ................................ 4, 9

Defendants 6D Global Technologies, Inc. ("6D"), 6D Acquisitions, Inc. ("6D Acquistions") and Tejune Kang (collectively, the "6D Defendants"), respectfully submit this memorandum of law in opposition to Plaintiff's motion for an attachment.

## PRELIMINARY STATEMENT

Plaintiff has moved for the extraordinary and drastic relief of an attachment and appointment of a receiver.  As set forth below, Plaintiff has woefully failed to meet its heavy burden of establishing the strict requirements to warrant such extraordinary forms of relief.

Plaintiff has utterly failed to establish the strict showing necessary to obtain an attachment pursuant to N.Y. CPLR § 6201(3).  CPLR § 6201(3) requires the moving party to prove that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts[.]"  N.Y. CPLR § 6201(3).  However, Plaintiff has not pointed to any evidence -- because there is none -- that 6D has assigned, disposed of, encumbered or secreted any property, removed any property from the state of New York, or is even attempting or planning to do any of these things.  Lacking such evidence, Plaintiff instead makes the facially implausible assertion that because 6D has added parties to this action, that this somehow constitutes a fraudulent transfer or attempted transfer of assets under CPLR § 6201(3).  This argument is baseless and has no basis in law or logic for several obvious reasons.

First, there is nothing in the text of CPLR § 6201(3), and no case law applying that statute, supporting the illogical assertion that adding parties to a case can, in itself, constitute a transfer, encumbrance or secretion of property under CPLR § 6201(3).  The 6D Defendants added the other investors under the Subscription Agreement because, in order to assert its

counterclaim (plead in the alternative) for reformation in order to *avoid* liability, New York law required that all parties to the Subscription Agreement be added to the action.  To begin with, adding parties to an action is obviously not any type of assignment, disposal, encumbrance or secretion of property, and thus clearly falls outside of the scope of CPLR § 6201(3).  Moreover, adding parties to an action – here by 6D in an attempt to *avoid* liability – could only result in any type of encumbrance on 6D's assets if many hypothetical things outside of 6D's control happened – including events under the control of the Court.  Assuming that the additional parties to the Subscription Agreement were served, actually appeared, and requested judgments (none of which have occurred), the only way that those other parties could ever pose a threat to 6D's property is if the Court, *contrary to 6D's arguments and over the 6D Defendants' objections*, actually awarded those parties judgments.  Since the Court is in complete control as to whether and when that could ever happen, 6D's merely adding parties to this action is clearly not the type of transfer or encumbrance that an attachment is needed to prevent, or that could possibly warrant an attachment, particularly given the very strict standard applicable to obtain a § 6201(3) attachment.  In essence, the Plaintiff's position is based on the absurd notion that the Court should grant an attachment to prevent its own hypothetical future awarding of judgments, contrary to 6D's arguments. This theory thus not only finds no home in the § 6201(3) or case law, but it is facially frivolous.

Second, the 6D Defendants merely adding other parties to this action cannot support an attachment for the additional reason that it would never meet Plaintiff's heavy burden of showing that this action was done with fraudulent intent, a necessary showing for a § 6201(3) attachment. Again, the 6D Defendants added those parties because New York law requires that where a party seeks reformation of a contract, it must add to the action all parties to the contract at issue.  This

facially legitimate reason for adding the parties rebuts any showing of fraudulent or nefarious intent, which it is Plaintiff's heavy burden of proving.  Moreover, the 6D Defendants are seeking reformation as an alternative form of relief to *avoid* liability to any party, as set forth in its opposition to Plaintiff's summary judgment motion.  This further rebuts that it was done with any fraudulent intent or intent to frustrate a judgment in Plaintiff's favor.  In addition, adding additional parties does not involve any secret or fraudulent plan, but an action taken openly and in public, and in full control of the Court.  There is no basis in the law or logic to suggest that this can possibly establish the required fraudulent intent in order to obtain a § 6201(3) attachment.

Third, even assuming that Plaintiff had met his heavy burden of proving the strict requirements of § 6201(3) (which he has not), he still cannot show the additional requirement under CPLR § 6212(a) that he establish a likelihood of success on the merits of his underlying breach of contract claim, which includes a showing that he actually suffered the massive and implausible $25 million of damages he nakedly asserts.  In opposing summary judgment, the 6D Defendants presented detailed and cogent arguments as to why, even assuming that there was a breach of the Subscription Agreement (which 6D disputes), the Plaintiff had not established any non-speculative expectation damages.  Yet, in its reply brief on summary judgment, 6D ignored all of the critical points raised by 6D regarding damages.  For example, 6D cogently argued that under Plaintiff's theory, there would be many millions of additional shares of 6D in existence, which necessarily would have reduced the price of each share of 6D stock.  Plaintiff also failed to respond to the point that, since it is undisputed that Plaintiff's stock was restricted, under New York law Plaintiff needed to provide expert testimony to quantify the value of the stock as of the date of the breach, appropriately discounted to take into account the restricted status of the stock.

Tellingly, neither in its moving brief for summary judgment seeking a $25 million judgment, nor in its reply brief on summary judgment, did Plaintiff offer any analysis whatsoever or expert declaration to address these critical points regarding his inability to establish non-speculative expectation damages.  In light of Plaintiff's abject failure to rebut on summary judgment that any expectation damages it seeks is inherently speculative, he certainly has not met his additional burden here of showing a likelihood that he will succeed in being awarded the massive $25 million judgment he seeks.  This is further reason why the Plaintiff has utterly failed to meet his heavy burden of justifying the drastic remedy of attachment.

Finally, even where the moving party has met its burden with respect to the elements of §§ 6212(a) and 6201(3), the Court may still deny the motion in its discretion.  Even if Plaintiff could ever establish damages (which he has already failed to do on summary judgment), at most he would be an unsecured creditor.  The only "need" that Plaintiff alleges for the sought-after attachment is his desire to improperly use the attachment procedure to gain priority over other potential unsecured creditors.  As a matter of law, the desire to seek priority over other unsecured creditors is not a basis for an attachment.  Moreover, the granting of an attachment would destroy the company and put approximately 60 employees out of work – all to serve the Plaintiff's illegitimate desire to abuse the attachment device to gain priority over other potential creditors.  Thus, even if Plaintiff had met all the other necessary elements of §§ 6212(a) and 6201(3), the Court should still exercise its discretion to deny the attachment.

Plaintiff has also failed to establish that he is entitled to the appointment of a receiver under Fed. R. Civ. P. 66.  First, the equitable remedy of an appointment of a receiver under Rule 66 is only appropriate where the moving party has brought a claim in equity.  It is not available where, as here, the moving party is anticipating a judgment based on breach of contract.  Second,

the party seeking a receiver must establish an actual interest in the property (such as a constructive trust claim), not merely that it has a breach of contract claim which would result in a routine judgment to be enforced against its general assets.

Finally, to obtain appointment of a receiver, the moving party must make a clear showing of necessity and that some emergency exists.  Plaintiff has shown nothing more than a desire to gain priority over any other potential unsecured creditors.  Accordingly, Plaintiff's request for the appointment of a receiver under FRCP Rule 66 should also be denied for this reason as well.

## ARGUMENT

### I.   PLAINTIFF HAS NOT MET THE HEAVY BURDEN OF PROVING A RIGHT TO AN ATTACHMENT

#### A.   The Strict Standard Applicable to Obtain the Extraordinary Relief of Attachment

It is well-established that attachment is an extraordinary remedy and "Plaintiffs bear a heavy burden in attempting to establish their right to an attachment[.]"  *Wen v. CT & TC Corporation*, 2017 WL 59082, at *2 (E.D.N.Y. Jan. 5, 2017) ( (internal citations omitted).  Due to their drastic effect on the defendant, the "New York attachment statutes are construed strictly against those who see to invoke the remedy."  *National Audubon Soc., Inc. v. Sonopia Corp.*, 2009 WL 636952, at *2 (S.D.N.Y. March 6, 2009) (internal citations omitted). *See also DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F.Supp.2d 308, 319 (E.D.N.Y. 2009) ("Because attachment is a harsh remedy, these statutory factors must be strictly construed in favor of those against whom attachment is sought.").  The remedy of attachment is "a particularly harsh remedy,...and is thus to be strictly confined to its statutory authorization which is construed against the one seeking the attachment."  *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC*

*Sportswear Corp.*, 2006 WL 2337186, at *5 (S.D.N.Y. Aug. 11, 2006) (*citing Ashland Oil, Inc. v. Gleave*, 540 F.Supp. 81, 83 (W.D.N.Y. 1982).

"The party moving for the attachment…has the burden of proving the four elements set out in CPLR § 6212(a)."[1] *Buy This, Inc. v. MCI Worldcom Communic'ns, Inc.*, 178 F.Supp.2d 380, 382 (S.D.N.Y. 2001) (emphasis added).  With respect to the third requirement, that one or more of the § 6201 grounds for attachment exist, Plaintiff relies exclusively on § 6201(3).[2] Under § 6201(3), Plaintiff must prove that, with an *intent* to defraud their creditors or frustrate the enforcement of a judgment, the defendants have assigned, disposed of, encumbered or secreted property, or removed it from the state or are about to do any of these acts.  N.Y. CPLR § 6201(3); *Buy This, Inc. v. MCI Worldcom Communic'ns, Inc.*, 178 F.Supp.2d 380, 382 (S.D.N.Y. 2001); *see also Natl. Audubon Soc., Inc. v. Sonopia Corp.*, 2009 WL 636952, at *4 (S.D.N.Y. Mar. 6, 2009); *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F.Supp.2d 308, 319 (E.D.N.Y. 2009).  Thus, Plaintiff "must prove each and every one of these five elements in order to meets its burden under New York Law."  *Buy This, Inc. v. MCI Worldcom Communic'ns, Inc.*, 178 F.Supp.2d 380, 382-83 (S.D.N.Y. 2001).

---

[1] Accordingly, Plaintiff must show, "by affidavit and such other written evidence as may be submitted, [1] that there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y. CPLR § 6212(a).

[2] "An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when: 3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts[.]"  N.Y. CPLR § 6201.

**B.      Plaintiff Has Not Met the Strict Standard of CPLR § 6201(3)**

**1.      Plaintiff Has Not Proven Any Actual, Planned or Imminent, Transfer or Dissipation of Assets Outside the Ordinary Course of Business**

It is axiomatic that in order to obtain an attachment, in addition to proving fraudulent intent (as is discussed in the following section below), the moving party must actually show that the defendant has, or is about to, assign, transfer, dispose, secrete or encumber property. *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *5 (S.D.N.Y. Aug. 11, 2006) ("Without evidence of the defendants' dissipation of assets, [Plaintiff] cannot establish a basis for attachment under N.Y. CPLR § 6201(3)."); *see also Buy This, Inc. v. MCI Worldcom Communic'ns, Inc.*, 178 F.Supp.2d 380, 383 (S.D.N.Y. 2001) ("In order for the Court to even consider attaching the property at issue here, [plaintiff] must show that the [defendants] 'have assigned, disposed of, encumbered or secreted, or removed [ ] from the state' the proceeds of the sale of airtime minutes..., or are 'about to do any of these acts.'") (*quoting* CPLR § 6201(3)). A general allegation that the defendant is running out of money is in sufficient. *Silverman v. Miranda*, 116 F.Supp.3d 289, 313 (S.D.N.Y. 2015) ("The fact that Defendants have lost money in three of the four years between 2010 and 2013, does not overcome the fact that Plaintiffs fail to satisfy the elements of C.P.L.R. Section 6201(3)").

Apart from the fact that Plaintiff cannot show any fraudulent intent, Plaintiff cannot show any actual, planned or imminent, assignment, disposal, encumbrance or secretion of property. As set forth in the accompanying Declaration of Tejune Kang ("Kang Dec."), 6D has not transferred, encumbered or dissipated any property to frustrate any creditor, nor is it planning any transfer of property outside the ordinary course of business. *See* Kang Dec. Not surprisingly, Plaintiff in its motion does not even allege that any such transfer of property has occurred or is planned. For this reason alone, Plaintiff is not entitled to an attachment.

Instead, Plaintiff offers an implausible theory that is not recognized in the law.  Namely, Plaintiff's theory is that because the 6D Defendants added parties to this action that this is a basis for attachment.  *See* Pl. Br. at 9.  There is nothing in the text of § 6201(3), or the case law applying the statute, that supports the illogical idea that absent any transfer of property, or impending transfer of property, that simply adding parties to a lawsuit can be grounds for the harsh remedy of attachment.[3]   Adding parties to a lawsuit is not an assignment, disposal, encumbrance or secretion of assets, and thus falls outside of the scope of the statute.  *Buy This, Inc. v. MCI Worldcom Communic'ns, Inc.*, 178 F.Supp.2d 380, 384 (S.D.N.Y. 2001) ("[Plaintiff] does not and can not, however, point to language in this statute that clearly encompasses this scenario.  As we must strictly construe the statute against [plaintiff], we decline to engage in an expansive reading of CPLR § 6201(3)…").

In addition to not meeting the statutory language that there be an actual, or attempted, dissipation or encumbrance of property, Plaintiff's theory defies logic.  The purpose of an attachment is to prevent the defendant from transferring assets for the purpose of frustrating the enforcement of a judgment.  What the Plaintiff is essentially arguing is that, while he cannot meet the statutory language that there be an actual or impending transfer or encumbrance of property, the addition of parties to this action may someday result in an encumbrance of 6D's assets.  But the adding of parties could only result in any type of encumbrance on 6D's assets if many hypothetical things outside of 6D's control happened – including events under the control of the Court.  Assuming that the additional parties to the Subscription Agreement were served,

---

[3] "As this language is to be construed strictly, we limit these terms to their plain meaning[.]" *Buy This, Inc. v. MCI Worldcom Communic'ns, Inc.*, 178 F.Supp.2d 380, 383 (S.D.N.Y. 2001) (finding that evidence of defendants' lack of vigilance in collecting money owed to them by a third party was insufficient to satisfy plaintiff's burden).

actually appeared, and requested judgments (none of which have occurred), the only way that those other parties could ever pose a threat to 6D's property is if the Court, *contrary to 6D's arguments and over the 6D Defendants' objections*, actually awarded those parties judgments. Since the Court is in complete control as to whether and when that could ever happen, 6D's merely adding parties to this action is clearly not a transfer or encumbrance that an attachment is needed to prevent, or that could possibly warrant an attachment, particularly given the very strict standard applicable to obtain a § 6201(3) attachment.

### 2. Plaintiff Has Not Satisfied CPLR § 6201(3) Because He Has Not Proven that the 6D Defendants Acted With Fraudulent Intent

Plaintiff's motion for an attachment fails for the additional reason that he cannot establish the required element of fraudulent intent. "[M]ere removal or assignment or other disposition of property is not grounds for attachment." *Silverman v. Miranda*, 116 F. Supp. 3d 289, 311–12 (S.D.N.Y. 2015). The party seeking an attachment under 6201(3) must also prove that the defendants assigned, disposed of, encumbered or secreted the property "with the intent to frustrate the enforcement of a judgment." *Id.* "Removal, assignment or other disposition of property is not a sufficient ground for attachment; *fraudulent intent must be proven*, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits. *Encore Credit Corp. v. LaMattina*, 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006) (*quoting Abacus Federal Sav. Bank v. Lim*, 8 A.D.3d 12 (1st Dep't 2004).[4]

---

[4] *Filmtrucks, Inc. v. Earls*, 635 F. Supp. 1158, 1164 (S.D.N.Y. 1986) ("Under § 6201(3), [Plaintiff] must demonstrate the alleged transfer...was not merely a routine disposition of corporate property. The statute requires that such actions be taken with intent to defraud, which cannot be lightly inferred but must be affirmatively proved."); *Strategic Growth Intern., Inc. v. RemoteMDx, Inc.*, 2008 WL 4179235, at *7 (S.D.N.Y. Sept. 10, 2008) ("fraudulent intent must be proven, not simply alleged or inferred in the moving papers.") (internal citations omitted); *see also Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *5

The required element of fraudulent intent cannot be based on "mere suspicion or speculation." *Wen v. CT & TC Corporation*, 2017 WL 59082, at *2 (E.D.N.Y. Jan. 5, 2017) Instead, "there must be a showing that 'fraudulent intent really exists in defendant's mind.'" Id. *See also, e.g.*, *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *6 (S.D.N.Y. Aug. 11, 2006) ("Conclusory allegations cannot supply the basis for granting the harsh remedy of attachment.").

Plaintiff makes the facially implausible assertion that by adding parties to this action, that this is somehow evidence of the 6D Defendants' fraudulent intent to frustrate Plaintiff's potential judgment. This argument is baseless for several obvious reasons. First, the reformation claim is made by 6D in the alternative, and the purpose was to *avoid* liability. *See* Kang Dec. In that regard, 6D added those parties because New York law requires that a party seeking reformation to avoid liability must add all parties to the contract at issue. *Apple Mortgage Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 282 (S.D.N.Y. 2016). This facially legitimate reason for adding the additional parties rebuts any showing of fraudulent intent.

Second, there is no case law, nor does Plaintiff cite any, supporting the illogical concept that adding parties to a case can, in itself, constitute fraudulent intent. In order to show fraudulent intent, "it must appear that such fraudulent intent really exists in the defendant's mind." *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F.Supp.2d 308, 321 (E.D.N.Y. 2009) (internal citations omitted). Adding additional parties to the underlying action does not involve any secret or fraudulent plan, but an action taken openly and in public, and in full control of the Court.

---

(S.D.N.Y. Aug. 11, 2006) ("Fraud cannot be inferred; it must be proved.") (internal citations omitted).

In light of the above, Plaintiffs have clearly failed to meet their burden, because fraudulent intent cannot be based on inferences. *Wen v. CT & TC Corporation*, 2017 WL 59082, at \*2 (E.D.N.Y. Jan. 5, 2017) ("Mere suspicion or speculation is not enough—there must be a showing that 'fraudulent intent really exists in defendant's mind.'") (*quoting Encore Credit Corp. v. LaMattina*, 2006 WL 148909, at \*3 (E.D.N.Y. Jan. 18, 2006)); *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at \*6 (S.D.N.Y. Aug. 11, 2006) (finding that the plaintiff "failed to prove that [the defendant] has dissipated assets with a fraudulent intent or an intent to frustrate the enforcement of a judgment" where the defendant "provided a reasonable explanation for the sudden change in its financial conditions").

Plaintiff argues that the court should infer fraudulent intent based on "Defendants' past conduct." Pl. Br. at 10. However, allegations of general past "fraudulent conduct" are not a sufficient ground for attachment. *See DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F.Supp.2d 308, 321 (E.D.N.Y. 2009) (Allegations that defendant played a "leading role" in a mortgage fraud scheme were insufficient to show that defendant "intends to dispose of his assets to defraud his creditors or thwart the enforcement of a future judgment in plaintiff's favor."). There is no allegation that the 6D Defendants have previously assigned, disposed of, encumbered or secreted assets to avoid creditors. As such, the fraud allegations in the Complaint, which do not involve alleged fraudulent transfers to avoid paying judgments, are insufficient to show that the 6D Defendants have the intent to defraud their creditors or frustrate the enforcement of a judgment.[5]

---

[5] Courts have held that even when the past fraudulent conduct is "strikingly similar" to the conduct that the plaintiff is now alleging, this alone does not support an attachment. *Encore Credit Corp. v. LaMattina*, 2006 WL 148909, at \*4 (E.D.N.Y. Jan. 18, 2006) (denying motion for attachment where the moving party "relies almost exclusively on a Federal Complaint against

Plaintiff cites to a decision by this court, *New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*, for the proposition that showing past fraudulent conduct is sufficient to satisfy plaintiff's burden of proof.  2008 WL 2115225, at *4 (S.D.N.Y. May 16, 2008).  This court appears to be pointing to previous fraudulent transfers that gave rise to the action.  Here, the Plaintiff is not pointing to any previous fraudulent transfers, but rather to generalized fraudulent conduct that is entirely unrelated to the alleged encumbrance at issue.  Where the previous fraudulent conduct is unrelated to the dissipation or encumbrance of assets, Plaintiff's reliance on those previous acts is insufficient to gain an attachment.

### 3.  Plaintiff Cannot Evade the Requirements of § 6201(3) by Pointing to 6D's Alleged Precarious Financial Condition

Plaintiff points to the alleged precarious financial situation of 6D, and potential judgments by other potential claimants, to justify his request for an attachment.  Pl. Br. at 12-14.  In that regard, the Plaintiff quotes out of context the observation by 6D's counsel, which was simply that if the Plaintiffs' theory of liability were to be accepted (which 6D disagrees with), all 34 subscribers under the Subscription Agreement would be entitled to judgments that would financially destroy 6D.  See Pl. Br. at 13.  In any event, Plaintiff's reliance on 6D's alleged precarious financial condition does not, as a matter of law, allow plaintiff to evade the strict requirements of § 6201(3): that it prove that the defendant with fraudulent intent is attempting to transfer assets in order to frustrate the ability of the plaintiff to collect on a likely judgment in its favor.

---

the individual defendants…for acts that are 'strikingly similar' to those complained of by [the plaintiff]" because "[t]he Federal Complaint does not allege, much less establish, that [the defendant] will or has assigned, disposed of, encumbered, or secreted property, or removed it from the state with the intent to defraud [the plaintiff] or to frustrate a judgment in this case, a showing of which is required in order to obtain an order of attachment.").

It is well-settled that the fact that a defendant may be financially troubled does not, in itself, form the basis for an attachment under CPLR § 6201(3). *See, e.g., Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331-32 (2d Cir. 1983) (affirming district court's denial of attachment under CPLR 6201(3) on grounds that, "the argument that I should grant an attachment on the theory that the Allen Corporation may be in shaky financial condition and at the time of judgment may not be able to respond to a judgment is not a statutory basis for an attachment"); C*ont'l Chartering & Brokerage, Inc. v. T.J. Stevenson & Co.*, 678 F. Supp. 58, 61 (S.D.N.Y. 1987) ("Continental's allegations that Stevenson is in financial difficulty, is laying off employees, and is winding down its operations, even if true, do not satisfy the requirements of CPLR 6201(3) to support the Order of Attachment."); *Key Equip. Fin. Inc. v. Zip, L.L.C.*, 2007 WL 1580035 at *5 (N.D.N.Y. May 29, 2007) ("Even if plaintiff submitted proof in evidentiary form that Zip is without assets…such proof is insufficient to show that attachment is needed."); *Solomon v. Casamento*, 1991 WL 41834 (E.D.N.Y. Feb. 27, 1991) (motion for attachment denied even where defendant was attempting to sell its sole asset.).   As discussed above, Plaintiffs have not made any showing that there was an actual transfer, or any attempted transfer, of 6D's assets, nor has it met its strict burden of proving any fraudulent intent.

Plaintiff contends that an attachment should issue because if 6D becomes liable to the other 33 similarly-situated investors, 6D may not be able to satisfy a potential judgment in favor of Plaintiff.  By making this argument, Plaintiff is essentially seeking to use an attachment as a vehicle to obtain priority over other potential unsecured creditors.  But the law is clear that this is not a valid basis for an attachment under 6201(3).  *See Caronia v. Hustedt Chevrolet, Inc.*, 2009 WL 3615289 at *2 (E.D.N.Y. Oct. 30, 2009) ("The gravamen of the plaintiff application is that she, as an unsecured creditor, seeks the courts assistance in preserving the defendants' assets in

the event that she ultimately attains a judgment in her favor that is enforceable.  Such assistance

by the court is clearly inappropriate.")

**C.    Plaintiff Cannot Show Probability of Success on the Merits, as Required by CPLR §
6212(a)**

Even assuming that Plaintiff could meet his heavy burden with respect to the

requirements of § 6201(3) (which he cannot), he still would not be entitled to an attachment

unless he could demonstrate a likelihood of success on the merits of his underling claim, as is

required by § 6212(a).

In their opposition to Plaintiff's summary judgment motion, the 6D Defendants provided

cogent, detailed arguments illustrating the inadequate and speculative nature of Plaintiff's

damages analysis.  Plaintiff never meaningfully responded to those arguments, and thus there is

no likelihood of success that can support an attachment.  "Implicit in the requirement that the

applicant for an order of attachment demonstrate a probability of success on the merits is that the

applicant demonstrate also a likelihood of recovery of the amount sought to be attached, even

assuming a likelihood of victory as to the fundamental merits of the claim."  *Chevron Corp. v.

Donziger*, 840 F.Supp.2d 773, 775 (S.D.N.Y. 2012).

As spelled out in the 6D Defendants' brief in opposition to summary judgment, Plaintiff

failed to provide an analysis of damages calculated based on the value of 6D stock as of the date

of the breach, which, under New York law, is the date at which such damages are calculated.

Further, Plaintiff's damages analysis in no way accounted for the tens of millions of additional

shares of 6D stock that would have existed in the but-for world the Plaintiff's theory of the case

entails, in which all 34 investors under the Subscription Agreement were entitled to 6.9 times the

number of shares they received.  As explained in the 6D Defendants' brief in opposition to

summary judgment, the issuance of these many millions of additional shares would have

14

substantially diluted the value of 6D shares, to the point where Plaintiff's expectation damages are purely speculative.  Doc. 79 at 7-8.

Furthermore, Plaintiff's damages analysis failed to discount the value of 6D shares to account for the undisputed fact that these shares would have been restricted, and that 6D stock was thinly traded.  It is well-settled under New York law that a discount factor should be applied when calculating damages arising under such circumstances.  Doc. 79 at 7-8.  Defendants further demonstrated that, given the circumstances of the case, any damages analysis offered by Plaintiff would be inherently speculative, and thus, under New York law, the appropriate remedy would be reliance damages.  Id. at 10.  Tellingly, Plaintiff never responded to these points on reply, nor offered any expert declaration to calculate damages.  Instead, the Plaintiff simply insisted – contrary to law -- that the market price of 6D stock, as of a date *different* from the date of the alleged breach, was the proper measure of damages.  This completely ignores all the valid problems with Plaintiff's damages theory that the Defendants had demonstrated.

Importantly, Plaintiff's inability to establish non-speculative expectation damages clearly distinguishes this case from the decision in *Reiss,* upon which Plaintiffs place principal reliance.  In *Reiss v. Financial Performance Corp.*, 97 N.Y.2d 195 (2d Cir. 2001), there were only two plaintiffs, each of whom held warrants under two independent contracts that allowed them to exercise those warrants at specific prices.  Therefore, *Reiss* did not involve the situation presented here, where there are 34 investors who participated in the Subscription Agreement, and whose contracts were interdependent, rather than independent.  Furthermore, the alleged damages here arise not from the exercise of warrants with a specified exercise price, but from shares of 6D, whose price per share would have obviously been massively driven down had many millions of additional shares flooded the market, as necessarily would have occurred under

Plaintiff's theory of the case (because every one the 34 investors would have been entitled to 6.9 times the number of shares).

Plaintiff also failed to rebut other valid points made in opposition to summary judgment, including that his argument that there was a breach of the agreement was a selective plain text argument that ignored other plain text of the agreement.   This includes the fact that the Share Exchange, as defined in the agreement, was a condition precedent to the conversion of investors' shares in the acquisition company to shares of 6D.  Doc. 79 at 12-13.  The Share Exchange, as defined in the agreement, never occurred, and the contract expressly provided that, in the event that the Share Exchange failed to occur, the investors would receive a return of their investment, not expectation damages.  Doc. 79 at 13.

Given the utter failure of Plaintiff to respond to these and other key points that Defendants made in opposition to summary judgment, Plaintiff has failed to demonstrate a likelihood of success that he will obtain any judgment, and certainly has not demonstrated any likelihood of proving $25 million in damages.   Indeed, Plaintiff's choice not to rebut any of critical arguments regarding his inability to demonstrate non-speculative expectation damages makes it appropriate for the Court to grant summary judgment in favor of the 6D Defendants under F.R.C.P. 56(f)(1).  *See Romag Fasteners, Inc., v. Fossil, Inc.*, 979 F. Supp. 2d 264, 287 (D. Conn. 2013) (granting summary judgment to non-movant *sua sponte* where moving party's experts provided insufficient evidence to support movant's claim).

**D.    Plaintiff Does Not Have a Compelling Need for an Attachment**

Even where a party seeking an attachment has proven the required elements of §§ 6212(a) and 6201(3), at may still deny the motion in the exercise of its discretion. Plaintiff argues that he has a "compelling need" for a pre-judgment attachment because, given all

outstanding or potential claims against the 6D Defendants, he might otherwise not be able to recover a potential future judgment.  Pl. Br. 12-13.  However, because Plaintiff has failed to establish the requirements for an attachment, the court need not consider whether or not there is a compelling need.  *Silverman v. Miranda*, 116 F.Supp.3d 289, 313 (S.D.N.Y. 2015) ("The fact that Defendants have lost money in three of the four years between 2010 and 2013, does not overcome the fact that Plaintiffs fail to satisfy the elements of C.P.L.R. Section 6201(3)); *Buy This, Inc. v. MCI Worldcom Communic'ns, Inc.*, 178 F.Supp.2d 380, 386 fn. 8 (S.D.N.Y. 2001) ("Considerations of 'equity' are appropriate, however, only after a party seeking an attachment makes the necessary showing under CPLR § 6212(a), as a factor for the court to weigh in exercising its discretion over whether to issue the order.").

Moreover, the only "need" that Plaintiff articulates is to have priority over all of the 34 similarly situated investors under the Subscription Agreement.  For the reasons set forth in their summary judgment papers, the 6D Defendants maintain that none of the investors are entitled to any judgment.  In any event, the desire of Plaintiff as a potential unsecured creditor to have priority over other potential unsecured creditors is not a valid basis for an attachment.  *Caronia v. Hustedt Chevrolet, Inc.*, 2009 WL 3615289, at *2 (E.D.N.Y. Oct. 30, 2009) ("The gravamen of the plaintiff application [for attachment] is that she, as an unsecured creditor, seeks the courts assistance in preserving the defendants' assets in the event that she ultimately attains a judgment in her favor that is enforceable.  Such assistance by the court is clearly inappropriate.").

Furthermore, there is ample reason for the court to exercise its discretion to deny Plaintiff's motion. "Where the attachment is likely to be oppressive, as here, and may work irremediable hardship, discretion of the court is called in aid of the oppressed." *Trigo Hnos., Inc. v. Premium Wholesale Groceries, Inc.*, 424 F.Supp. 1125, 1133 (S.D.N.Y. 1976) (internal

17

citations omitted).  While 6D currently has sufficient assets to run its business (*see* Kang Dec.), an order of attachment would destroy the company and needlessly cause its approximately 60 employees to lose their jobs.

**E.     Plaintiff is not Entitled to an Attachment Against Tejune Kang, Who Signed the Subscription Agreement in His Official Capacity, or 6D Global Technologies, Inc., Who is Not a Signatory to the Agreement**

Without explanation, Plaintiff seeks an attachment against Tejune Kang, individually, based on the underlying breach of contract claim. As the 6D Defendants pointed out in their opposition to Plaintiff's motion for summary judgment, Kang signed the subscription agreement in his capacity as chief executive officer of 6D Acquisitions and not individually.  Doc 79 at 22. "An individual who signs a corporate contract and indicates the name of the corporation and the nature of his representative capacity on the contract is generally not subject to personal liability." *Metro. Switch Bd. Co. v. Amici Assocs., Inc.,* 20 A.D.3d 455, 455 (2d Dep't 2005) ("the respondents established their prima facie entitlement to judgment as a matter of law by showing that they executed the subject agreement solely in their capacities as corporate officers, and without any intent to become personally liable to perform thereunder").  Plaintiff failed to address this issue in its summary judgment reply brief and did not address it in its moving brief on this motion.  There is absolutely no basis for an attachment against Kang individually.

Plaintiff similarly has not explained any basis for seeking an attachment against 6D Global Technologies, Inc.  The signatory to the Agreement was 6D Acquisitions.  Under Section 1(b) of the Agreement, it was agreed that this entity would be dissolved.  In its summary judgment motion, Plaintiff never explained how or why 6D would be liable for a contract it did not sign. As explained in Defendants' opposition to Plaintiff's motion for summary judgment (Doc. 79 at 14), the Subscription Agreement plainly provided that the remedy if the conditions therein were

not met was a return of investment, not any expectation damages, and certainly not against 6D, which did not sign the agreement.

## II.   APPOINTMENT OF A RECEIVER UNDER FRCP RULE 66 WOULD BE IMPROPER

Plaintiff similarly has similarly failed to demonstrate that he is entitled to the extraordinary remedy of a receiver pursuant to FRCP Rule 66.  After *Grupo Mexicano*, courts are exceedingly cautious in breach of contract cases to "secure the money judgment to which [the plaintiff] may someday become entitled by holding up the money, as it were, through an injunction against any transfer."  *Owens v. Gaffken & Barriger Fund LLC*, 2009 WL 773517, at *2 (S.D.N.Y. Mar. 24, 2009); *see also Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).

To begin with, the equitable remedy of an appointment of a receiver under Rule 66 is only appropriate where the moving party has brought a claim in equity.[6]  *Owens v. Gaffken & Barriger Fund LLC*, 2009 WL 773517, at *2 (S.D.N.Y. Mar. 24, 2009) ("ordinarily, a party who brings only legal claims is not entitled to equitable relief, such as the appointment of a receiver"); *see also De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212 (1945).  It is not available where, as here, the moving party has only brought legal claims.

Second, Plaintiff has failed to "show that he [ ] has some legally recognized right in that property that amounts to more than a mere claim against defendant."  *Owens v. Gaffken & Barriger Fund LLC*, 2009 WL 773517, at *2 (S.D.N.Y. Mar. 24, 2009) (internal citations

---

[6] Plaintiff fails to identify any federal or state statute that grants this federal court the ability to grant equitable relief in a case involving only legal claims.  *See Intl. Fid. Ins. Co. v. Tsapakis Const. Corp.*, 1988 WL 86684, at *1 (E.D.N.Y. Aug. 17, 1988) ("The appointment of a receiver by a federal court may be sought by any person ... having an interest in property that a statute or one of the general principles of equity authorizes the court to protect by this remedy") (*citing* Wright & Miller, Federal Practice and Procedure § 2983).

omitted); *see also Intl. Fid. Ins. Co. v. Tsapakis Const. Corp.*, 1988 WL 86684, at *1 (E.D.N.Y. Aug. 17, 1988); *Securities and Exch. Commn. v. Republic Nat. Life Ins. Co.*, 378 F. Supp. 430, 437 (S.D.N.Y. 1974).  Plaintiff expressly acknowledges that the property and assets he seeks to "protect" belong to 6D.  Instead, citing absolutely no case law, Plaintiff argues that the appointment of a receiver is "essential to protect the property and assets of SIXD from the threated dissipation described herein."  Pl. Br. at 14.  However, case law makes clear that the appointment of a receiver for this purpose is improper.  *Owens v. Gaffken & Barriger Fund LLC*, 2009 WL 773517, at *2 (S.D.N.Y. Mar. 24, 2009) (denying plaintiff's motion for a receiver, finding that "no justification for the appointment of a receiver other than for the improper purpose of ensuring that the Fund will not dissipate assets which dissipation could frustrate the plaintiffs' ability to collect on any judgment that may be rendered in their favor.") (internal citations omitted); *see also Intl. Fid. Ins. Co. v. Tsapakis Const. Corp.*, 1988 WL 86684, at *1 (E.D.N.Y. Aug. 17, 1988) ("Although the sale of the property could conceivably make the recovery of money damages more difficult, where a monetary recovery will adequately compensate the plaintiff, difficulty in collecting damages does not constitute irreparable harm.").

Even if the equitable remedy of a receivership were available, Plaintiff has failed to show that he is entitled to one.  Citing no case law, Plaintiff merely rattles off a list of "factors" that he says should be dispositive on the issue.  However, "[c]ourts employ this provisional, equitable remedy sparingly, inasmuch as a receivership may interfere seriously with defendant's property rights by ousting him or her from control, and sometimes even possession."  *Owens v. Gaffken & Barriger Fund LLC*, 2009 WL 773517, at *2 (S.D.N.Y. Mar. 24, 2009) (internal citations omitted).  Plaintiff must make a clear showing of "necessity, and that emergency exists[.]" *Amalgamated Consultants Ltd. v. De Savary*, 1985 WL 3044, at *7 (S.D.N.Y. Oct. 8, 1985)

20

(finding that plaintiff had "not succeeded in making such a clear showing" where defendants were not threatening to liquidate their holdings nor had they exhibited a pattern of secreting assets) (internal citations omitted).  Because Plaintiff has shown nothing more than a desire to gain priority over any other unsecured creditors, his request for the appointment of receiver under FRCP Rule 66 should be denied.

## **CONCLUSION**

For the reasons set forth above, the 6D Defendants respectfully request that the Court deny Plaintiff's motion for a pre-judgment attachment under FRCP Rule 64 and N.Y. CPLR §§ 6212(a) and 6201(3), and for the appointment of a receiver under FRCP Rule 66.

Dated: New York, New York
  October 6, 2017

        By:  /s/ Tom M. Fini
           Tom M. Fini, Esq.
         Jacques Catafago, Esq.
         Tom M. Fini, Esq.
         CATAFAGO FINI LLP
         The Empire State Building
         350 Fifth Avenue, Suite 7412
         New York, NY 10118
         212-239-9669
         tom@catafagofini.com

         Attorneys for 6D Global Technologies, Inc.,
         6D Acquisitions, and Tejune Kang