UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JOHN COTTAM,

                Plaintiff,

-v-

GLOBAL EMERGING CAPITAL GROUP,
LLC, *et al.*,

                Defendants.

No. 16-cv-4584 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

    Now before the Court is Plaintiff's motion for the pre-judgment attachment of Defendants' assets pursuant to Federal Rule of Civil Procedure 64 and for the appointment of a receiver to manage the operations of Defendant 6D Global Technologies pursuant to Federal Rule of Civil Procedure 66. For the reasons set forth below, the motion is DENIED in both respects.

I. BACKGROUND

    The Court assumes the parties' familiarity with the facts of this case. In short, Plaintiff brought this breach of contract and fraud action to recover shares of stock he believes he is owed under a subscription agreement he executed on September 18, 2014. The terms of the offer set forth in the subscription agreement provided that Plaintiff would purchase subscription units ("Units") from an investment vehicle called 6D Acquisitions, and that each Unit would consist of 50,000 shares of 6D Acquisitions' common stock. (Doc. No. 1-3 at 11, Compl. Ex. C.) The offer also described a share exchange between CleanTech Innovations, Inc., and Initial Koncepts, Inc., whereby CleanTech would issue approximately half of its outstanding shares to the shareholders of Initial Koncepts in exchange for all of the outstanding shares of Initial Koncepts, rendering

Initial Koncepts a wholly-owned subsidiary of CleanTech. (*Id.* at 10.) CleanTech would also change its name to 6D Global Technologies, Inc. ("6D"). (*Id.*) The subscription agreement provided that, upon closing of the share exchange, all of 6D Acquisitions' stock (represented by the Units) "shall be automatically converted on a 1:1 basis" into shares of 6D Global. (*Id.* at 11.) However, prior to the share exchange, CleanTech underwent two reverse stock splits: a one-for-three reverse split on July 14, 2014 (Doc. No. 45-1), and a one-for-two and three-tenths split on September 25, 2014 (Doc. No. 45-2). On September 18, 2014, Plaintiff signed the subscription agreement and purchased 58 Units (2,900,000 shares of 6D Acquisition's common stock) for a total cost of $870,000.00. (Compl. ¶ 26.) The share exchange occurred on September 29, 2014 (Doc. No. 45-3), after which Plaintiff received 420,290 shares in 6D – 2,479,710 fewer than the number of shares in 6D Acquisitions he had purchased. (Compl. ¶ 30.) In September of 2014 and March of 2015, when 6D's share price was between $8 and $9, Plaintiff attempted to sell his shares of 6D, but was unable to because they were restricted. (*Id.* ¶¶ 54, 57.) In August of 2015, the restrictions were removed and Plaintiff sold his shares, but the share price had fallen to $2.24 a share. (*Id.* ¶ 64.)

Plaintiff filed a complaint on June 16, 2016 asserting claims sounding in fraud, breach of fiduciary duty, and breach of contract. (Doc. No. 1.) Defendant filed a motion to dismiss the complaint on September 21, 2016 (Doc. No. 43), which the Court denied on July 11, 2017 (Doc. No. 53). Plaintiff answered the complaint and brought a counterclaim against Plaintiff on July 29, 2017 (Doc. No. 58), and on July 31, 2017, the Court held a conference on Plaintiff's contemplated motions for summary judgment and motion to dismiss Defendants' counterclaims. Defendants filed an amended answer on August 24, 2017, adding thirty-three Counterclaim-Defendants whom Defendants describe as parties to the same or a very similar subscription agreement. (Doc. No.

68.) On September 22, 2017, Plaintiff filed his motion for pre-judgment attachment and appointment of a receiver. (Doc. No. 84-1 ("Mem.").) Defendants filed their opposition to the motion on October 6, 2017. (Doc. No. 85 ("Opp.").)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 64, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Plaintiff's motion for an order of attachment is governed by New York Law, according to which Plaintiff bears the burden of proving the four elements set forth in CPLR R 6212(a). *See Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, No. 09-cv-975 (PGG), 2009 WL 636952, at *2 (S.D.N.Y. Mar. 6, 2009). Those elements are:

> that there is a cause of action, that it is probable that [plaintiff] will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to plaintiff.

CPLR R 6212(a). As to the grounds for attachment provided in Section 6201, Plaintiff relies solely upon paragraph 3 of that Section, which allows for attachment when

> the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts.

CPLR § 6201(3). A plaintiff bears "a heavy burden in attempting to establish its right to an attachment, because 'New York attachment statutes are construed strictly against those who seek to invoke the remedy.'" *Nat'l Audubon Soc'y, Inc.*, 2009 WL 636952, at *2 (quoting *Buy This, Inc. v. MCI Worldcomm Commc'ns Inc.*, 178 F. Supp. 2d 380, 383 (S.D.N.Y. 2001)).

A federal court may appoint a receiver pursuant to Federal Rule of Civil Procedure 66 to protect a party's interest in property "where the rights over that property are in dispute." *Varsames*

3

v. *Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y.2000); *see also Rosen v. Siegel*, 106 F.3d 28, 33–34 (2d Cir. 1997). The appointment of a receiver is an equitable remedy, *see On-Time Disposal, Inc. v. N. Jersey Recycling, LLC*, No. 12-cv-6300 (NSR) (PD), 2015 WL 5544434, at *3 (S.D.N.Y. Sept. 17, 2015), utilized in extraordinary circumstances, and "usually imposed only where no lesser relief will be effective," *Ferguson v. Tabah*, 288 F.2d 665, 674 (2d Cir. 1961); *see also Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) ("The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property."). Parties making a motion under Federal Rule of Civil Procedure 66 "bear a 'heavy burden to establish an actual need' for the receiver." *Insussary v. Adminstaff Companies, Inc.*, No. 98-cv-5404 (AKH), 1999 WL 305102, at *2 (S.D.N.Y. May 14, 1999) (quoting *Meineke Discount Muffler Shops, Inc. v. Noto*, 603 F.Supp. 443, 444 (E.D.N.Y. 1985)).

III. DISCUSSION

A. Plaintiff Has Not Satisfied CPLR Section 6201(3)

Plaintiff has failed to demonstrate either of the elements of Section 6201(3), which requires Plaintiff to demonstrate both (1) that the Defendants "assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts," and (2) that Defendants did so with fraudulent intent. First, it is not at all clear that the addition of parties to this suit constitutes disposition or encumbrance of property, or evidence that Defendants are about to dispose of or encumber property. Plaintiff's theory appears to be that, by adding other parties that they believe to be entitled to relief, Defendants have intentionally made it less likely that they will be able to satisfy the entirety of a potential judgment entered in Plaintiff's favor since, if Plaintiff is successful, then each of the other thirty-three parties would arguably be entitled to a

comparable judgment. Even taking this theory at face value, the addition of these parties by Defendants is neither an actual encumbrance of property nor evidence that Defendants are "about to" encumber property, and Plaintiff cites no authority to the contrary. Rather, under the most generous interpretation of Plaintiff's theory, the actual encumbrance of assets would take place far in the future and would be contingent upon several events, including judgment in this case.

Second, Plaintiff has not demonstrated that Defendants acted with fraudulent intent. Here, Plaintiff principally argues that fraudulent intent may be inferred in light of a recent SEC enforcement action and a parallel criminal indictment, both of which were attached to the complaint, involving Defendants.[1] (Doc. Nos. 1-1, 1-2.) In those cases, Benjamin Wey, whom Plaintiff vaguely alleges "orchestrated" the share exchange at issue in this case (Doc. No. 1 ¶ 51), was charged with manipulating the stock of one of the predecessors of 6D as part of a money laundering scheme. (*See* Doc. No. 84-8.) Largely as a result of Wey's conduct, the SEC delisted 6D from the NASDAQ exchange. (*Id.* 2.) In its order denying 6D's appeal of the delisting decision, the SEC also brought to light more recent events at 6D, including the resignation of the chair of 6D's audit committee. (*Id.* 3.)

Although the resignation of the chair of 6D's audit committee is troubling and might be relevant to investors, it does not demonstrate an intent to defraud creditors or frustrate the enforcement of a future judgment as required by Section 6201(3). The facts of this case in no way resemble those in *New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*, in which the unrebutted evidence demonstrated that one of the defendants "repeatedly transferred his personal assets as well as the assets of [a corporate defendant] to family members or close business

---

[1] The only Defendant in this case that is named in either the enforcement action or the indictment is William Uchimoto, who was voluntarily dismissed by Plaintiff on August 11, 2016, in order to arbitrate the claims against him. (Doc. No. 31.)

associates for little to no consideration." No. 07-cv-8008 (RJS), 2008 WL 2115225, at *5 (S.D.N.Y. May 16, 2008); *see also Bank of Leumi Tr. Co. of New York v. Istim, Inc.*, 892 F. Supp. 478, 483 (S.D.N.Y. 1995) (involving a defendant who "has not only removed its assets from New York but has also removed them from the United States."); *Bd. of Ed. of City of New York v. Treyball*, 446 N.Y.S.2d 417, 417 (1982) (involving transfer of assets into "bank accounts in the names of [defendant's] two teenage sons."); *Mineola Ford Sales Ltd. v. Rapp*, 661 N.Y.S.2d 281, 282 (1997) (finding of intent to defraud investors where the defendant "had falsified business records and accounting ledgers and diverted the plaintiff's funds for her own personal use . . . . [and] offered no explanation as to what had happened to hundreds of thousands of dollars belonging to the plaintiff while the funds were under her control.").

In short, Plaintiff has done little to demonstrate that the "transaction" at issue here, namely, Defendants' addition of thirty-three parties to this action, either constitutes an encumbrance of assets or demonstrates the requisite indicia of fraud to justify an inference that Defendants added those parties with the intent to defraud Plaintiff. And just because Plaintiff included an allegation of fraud in his complaint does not entitled him to an inference of fraudulent intent by Defendants. Accordingly, Plaintiff's motion for pre-judgment attachment of assets must be denied.

B. Appointment of a Receiver Would Be Improper

Plaintiff also moves for the appointment of a receiver to administer the operations of 6D "to prevent further wasting of assets." (Mem. 14.) As an initial matter, the Court is without the power to appoint a receiver in this case because Plaintiff did not request any equitable relief in his complaint. *See Owens v. Gaffken & Barriger Fund LLC*, No. 08-cv-8414 (WCC), 2009 WL 773517, at *2 (S.D.N.Y. Mar. 24, 2009) ("[O]rdinarily, a party who brings only legal claims is not entitled to equitable relief, such as the appointment of a receiver.") (citing *Grupo Mexicano de*

6

*Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 312 (1999). For that reason alone, Plaintiff's motion must be denied.

However, even if the Court had the authority to appoint a receiver, doing so would not be appropriate in this instance. Courts look to a number of factors when evaluating the need for a receiver, including

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Ross v. Thomas*, No. 09-cv-5631 (SAS), 2011 WL 2207550, at *5 n.20 (S.D.N.Y. June 6, 2011) (quoting 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1973)). Plaintiff's allegations of fraud in this case, as well as Defendants' prior dealings, hardly warrant the appointment of a receiver here, where Plaintiff's complaint sounds more clearly in breach of contract than fraud, and in any event does not allege that Defendants concealed or squandered assets. Additionally, as discussed above, Plaintiff has not alleged, much less demonstrated, that Defendants have fraudulently hidden or disposed of any assets since this case was initiated.

With regard to the second factor – the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered – Plaintiff offers no evidence or affidavit beyond what he claims to be an admission by Defendants at the July 31, 2017 conference that if each of its investors was entitled to seven times their investment, as Plaintiff in this action claims, it may go into bankruptcy. (Doc. No. 84-4 at 27:15–28:7.) However, 6D's Chairman and CEO asserts that "6D is currently earning sufficient revenue to pay its ordinary expenses (i.e., payroll for employees, lease payments for office space and vendors providing services in the ordinary course)." (Doc. No. 85-1 ¶ 11.) Clearly, 6D's purpose in adding thirty-three parties relates to its

proffered interpretation of the contract and its claim for relief in the form of reformation, not as a means to strip the company of its assets and render it judgement-proof. Even taking Plaintiff's theory regarding the encumbrance of assets for granted, the fact that thirty of the thirty-three parties added by Defendants have, at the time of this order, failed to appear and are in default on the claims made against them makes the danger of property being lost or diminished in value far from "imminent." In any event, even if the contract did require 6D to pay each of the thirty-three parties the "windfall" that Plaintiff seeks here, the appointment of a receiver would have no effect on that obligation.

IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for pre-judgment attachment of assets and for the appointment of a receiver is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 84.

SO ORDERED.

Dated: December 29, 2017
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE